70 F.3d 1277
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ADMIRAL INSURANCE COMPANY, a Delaware corporation, Plaintiff-Appellant,
v.
Stephen RUSHMORE; Hospitality Valuation Services, Inc., a
New York corporation; Bruce D. Greenberg, Alayne Greenberg;
Michael P. McCalley; Shirley McCalley; Greenberg,
Campbell, Chin & Associates, a partnership; Dan W. Mahoney,
Susan Mahoney; Mahoney, Cole & Associates, a partnership;
Michael J. Naifeh; Bonny Naifeh, Defendants-Appellees.
 No. 94-15244.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 13, 1995.*
Decided Nov. 21, 1995.
 
 Appeal from the United States District Court for the District of Arizona, No. CV-89-00280-JET; Jack E. Tanner, District Judge, Presiding.
 D.Ariz.
 REVERSED AND REMANDED.
 Before: HALL, KOZINSKI and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Admiral Insurance Co. ("Admiral") appeals the dismissal of its complaint against Steven Rushmore and Hospitality Services, Inc. (collectively "HVS"). The district court determined that Admiral's position was inconsistent with one it had taken in a previous arbitration proceeding. In the prior arbitration, Admiral argued that it had reasonably relied on the opinions of professionals like HVS. Here Admiral argues that, although its prior reliance was reasonable, the HVS appraisals turned out to be negligent or worse. Because there is no inconsistency between these two positions, there can be no judicial estoppel and we therefore reverse.
 
 BACKGROUND
 
 3
 Some background is in order. In approximately 1984, Admiral began issuing surety bonds in connection with various limited partnerships formed by the JNC Companies ("JNC"). The partnerships used promissory notes signed by their investors to secure loans for real estate development projects, and Admiral's surety bonds were issued to guarantee payment in the event that the investors defaulted on the promissory notes. Because of its relatively small size and financial condition, Admiral could not afford to write bonds of this type without obtaining reinsurance from several secondary insurance companies. Therefore, it entered into reinsurance treaties with a number of companies to diversify the risk of loss should the partnerships fail to meet their obligations. In the end, many of the projects failed, and Admiral was required to pay on the bonds.
 
 
 4
 As Admiral's liability on the bonds grew, several of its reinsurers sought to rescind their reinsurance treaties, claiming Admiral had failed to follow its own underwriting procedures and did not comply with the minimum industry standards in making its underwriting decisions. This dispute was submitted to arbitration, where Admiral successfully defended its underwriting practices and was able to enforce the reinsurance treaties. As part of its case before the arbitration panel, Admiral submitted a report prepared by Deloitte & Touche, which opined that Admiral's underwriting decisions were sound and that Admiral had reasonably relied upon information provided by third-party professionals, including appraisals by HVS.
 
 
 5
 One of the bonds on which Admiral was required to pay related to a resort development involving the Hacienda Moltacqua Limited Partnership. In the process of deciding whether to issue the bond, Admiral received, and relied upon, an appraisal prepared by HVS valuing the development at $31.7 million.[1] When the project failed, Admiral sued HVS alleging that the appraisal was negligently or fraudulently misleading, and that Admiral's damages were proximately caused by its reliance on the appraisal.
 
 
 6
 HVS moved for judgment as a matter of law, arguing that Admiral's position in this lawsuit was inconsistent with its position in arbitration and therefore barred by the doctrine of judicial estoppel. The district court agreed, and granted the motion.
 
 DISCUSSION
 
 7
 I. HVS's Motion for Judgment as a Matter of Law
 
 
 8
 The parties expend considerable energy arguing over the nature and proper timing of the HVS motion. Admiral argues the motion was actually for summary judgment and therefore untimely because it was not filed more than ten days prior to the hearing.[2]
 
 
 9
 HVS contends that its motion was not a summary judgment motion but rather a motion for judgment as a matter of law, which may be brought "at any time before submission of the case to the jury." Fed.R.Civ.P. 50(a)(2). Since Rule 50 motions may be made "at any time," HVS argues, the rule implicitly authorizes pretrial motions for judgment as a matter of law.[3]
 
 
 10
 We find it unnecessary to resolve this dispute because even if construed as a summary judgment motion, the district court had discretion to entertain it. In Portsmouth Square v. Shareholders Protective Comm., 770 F.2d 866 (9th Cir.1985), the district court entered summary judgment sua sponte, without providing the requisite ten-days notice. On review, this Court held that the purpose of the notice requirement was "to ensure that the party against whom judgment was entered had a full and fair opportunity to develop and present facts and legal arguments in support of its position." Id. at 869 (citing Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir.1982)). See also, Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir.1984) (conversion of 12(b) motion into summary judgment without ten-days notice). If we were to construe HVS's motion as one for summary judgment, we would be saying, in essence, that the district court "converted" it from a motion for a directed verdict into a summary judgment motion.
 
 
 11
 By analogy, the question is whether Admiral was "fairly apprised" that the district court was going to treat the motion as one for summary judgment, and whether it had a "full and fair opportunity" to make its case. Admiral complains that it was unable to establish fully the factual record necessary to defeat HVS's motion. At the hearing, however, Admiral's attorney stated that "We're comfortable with the brief [on the judicial estoppel motion], we're comfortable with the merits of these motions.... We're comfortable with our position on that issue." Furthermore, once it became clear that the district court was not willing to strike HVS's motion as untimely, Admiral's counsel indicated that he was "prepared to argue" the judicial estoppel issue. Admiral should not now be heard to argue that it was unable adequately to present its case.
 
 
 12
 Therefore, even if the HVS motion were properly characterized as one for summary judgment, Admiral was not prejudiced.
 
 II. Judicial Estoppel
 
 13
 The doctrine of judicial estoppel is designed to preclude a party from asserting inconsistent positions in successive proceedings. "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' " Arizona v. Shamrock Foods Co., 729 F.2d 1208, 1215 (9th Cir.1984) (quoting 1B Moore's Federal Practice p .405, at 467), cert. denied, 469 U.S. 1197 (1985); Id. at 513 (citations omitted).
 
 
 14
 A majority of courts hold that judicial estoppel is inapplicable unless the first court actually adopted the party's prior inconsistent position. See Morris v. California, 966 F.2d 448, 452 (9th Cir.1991), cert. denied, 113 S.Ct. 96 (1992). The minority rule, in contrast, holds that the doctrine applies even if the party was unsuccessful in asserting the inconsistent position, if by changing positions the litigant is playing "fast and loose" with the court. Id. at 453.
 
 
 15
 The Ninth Circuit has recognized the doctrine but has accepted neither the majority nor minority rules. See Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993). Instead, this circuit has generally examined the facts under both rules and, in most cases, has declined to preclude the litigants' allegedly inconsistent claims. See, e.g., United States v. Garcia, 37 F.3d 1359, 1366-67 (9th Cir.1994).
 
 
 16
 HVS apparently convinced the district court that Admiral's position in this case--that the HVS appraisal was negligently or fraudulently prepared--was directly contradictory with Admiral's contention in arbitration that its reliance on the opinions of third party professionals (including HVS's appraisal) was reasonable. The court, therefore, determined that judicial estoppel applied and dismissed Admiral's lawsuit.
 
 
 17
 When properly construed, however, Admiral's positions are not inconsistent. Admiral made no representation regarding the quality of the content of HVS's appraisal during arbitration; rather, it merely contended that its underwriting decisions were reasonable, and that its reliance on third-party work-product (of which HVS's appraisal was only a small part) was justifiable given the information available at the time.
 
 
 18
 The Deloitte & Touche report commissioned by Admiral concluded that Admiral's underwriting decisions were reasonable given the "large volume of information.... [that] appeared comprehensive and well-prepared." Additionally, the report stated that "JNC's accounting and legal services and appraisal work were provided by reputable, appropriately certified professionals." Nowhere in the report, however, is there any indication that Admiral was vouching for the veracity of all the documentation on which it based its underwriting decisions. The report simply stated that Admiral's underwriting approach and decisions were reasonable.
 
 
 19
 There is nothing inconsistent in Admiral's claim that it later realized that the HVS appraisal (that appeared valid on its face) contained negligent or fraudulent misstatements.
 
 
 20
 Furthermore, to the extent that Admiral may have altered its position regarding HVS's appraisal, Admiral claims it is due to the subsequent discovery of allegedly misleading statements in the appraisal. Judicial estoppel should not act as a bar when one party's positions change because she subsequently discovered another's fraud or negligence. See, e.g., Morris v. California, 966 F.2d 448, 453 (9th Cir.1991); In re Corey, 892 F.2d at 835-36; Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C.Cir.1980).
 
 CONCLUSION
 
 21
 We reverse the order dismissing Admiral's complaint and remand the matter to district court for proceedings not inconsistent with this disposition.[4]
 
 
 22
 REVERSED and REMANDED.
 
 KOZINSKI, Circuit Judge, concurring:
 KOZINSKI, Circuit Judge, concurring:
 
 23
 For reasons succinctly explained in the first paragraph of the memorandum disposition, I concur in the judgment.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 *
 * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although it originally disputed that Admiral relied on the appraisal, HVS now concedes, for the purposes of this appeal, that Admiral received and relied on the appraisal
 
 
 [2]
 See Fed.R.Civ.P. 56(c) ("The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing.")
 
 
 [3]
 HVS does not cite, nor have we located, any cases in which a Rule 50 motion has been filed prior to trial
 
 
 [4]
 Because we hold that Admiral's litigation positions were not inconsistent, we need not determine whether the arbitration panel adopted Admiral's position, or whether Admiral was playing "fast and loose" with the district court