**SPERONI S.P.A., Plaintiff–Appellant,**

v.

**PERCEPTRON, INC., Defendant–Appellee.**

No. 98–2192.

United States Court of Appeals, Sixth Circuit.

June 13, 2001.

Before MERRITT and NELSON, Circuit Judges, and OLIVER, District Judge.[*]

NELSON, Circuit Judge.

The plaintiff, a European distributor of products manufactured in the United States by the defendant, claims in this litigation that the defendant tortiously bid on a contract to supply one of the plaintiff's customers. Concluding that there was no room for doubt that the bid in question had been submitted by a subsidiary of the defendant, and not by the defendant itself, the district court entered summary judgment in favor of the defendant. The plaintiff has appealed that judgment.

While the litigation was pending in the district court, the subsidiary initiated arbitration proceedings against the European distributor. In the course of the arbitration the distributor took the position that the competing bid had been submitted by

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

the subsidiary. The distributor's arbitrating position has now been validated by an arbitral award.

Upon review, we conclude that the plaintiff is barred by the doctrine of judicial estoppel from maintaining that the bidder was the defendant itself. Even if the judicial estoppel doctrine were not applicable, moreover, we should be constrained to hold that there is no genuine issue as to the identity of the bidder. Accordingly, and for the further reasons stated herein, we shall affirm the judgment of the district court.

I

The defendant, Perceptron, Inc. ("Perceptron"), is a Michigan corporation that manufactures industrial measurement systems. Perceptron B.V. ("B.V.") is a Dutch subsidiary of the Michigan company. B.V. oversees the distribution of Perceptron's measurement systems throughout Europe.

The plaintiff, Speroni S.p.A., is an Italian corporation. In 1988 B.V. approached Speroni about distributing Perceptron products in Italy. The relationship flourished, and in June of 1995 B.V. extended Speroni's distribution rights to France. The French contract contained exclusivity provisions under which B.V. was prohibited from using another distributor in France or selling Perceptron products there directly. Disputes arising under the agreement were subject to arbitration before the International Court of Arbitration of the International Chamber of Commerce ("ICC").

On December 16, 1997, having become dissatisfied with both the level of Speroni's sales in France and the company's commitment to service there, B.V. attempted to terminate the French distributorship agreement. Speroni refused to accept the termination.

In March of 1998 Speroni submitted a bid to the French automobile manufacturer Peugeot, offering to sell certain Perceptron products for use in Peugeot's "N–68" project. Speroni then learned that Peugeot had received a competing bid in which another source offered the same Perceptron products for sale.

On June 2, 1998, Speroni filed a two-count complaint against Perceptron (the American company) in the United States District Court for the Eastern District of Michigan. Jurisdiction was predicated on diversity of citizenship and the amount in controversy. See 28 U.S.C. § 1332(a)(2). Count I of the complaint alleged that Perceptron had tortiously interfered with Speroni's business relationship with Peugeot by submitting the competing bid for the N–68 project. Count II alleged that Perceptron had tortiously interfered with the distributorship arrangement by inducing B.V. to commit a breach of contract. B.V. was not named as a defendant.

In lieu of an answer Perceptron filed a motion to dismiss the complaint on the ground that the offending bid had been submitted by B.V. and not by Perceptron. In this connection Perceptron submitted an affidavit in which B.V. managing director Frank Schoenwitz attested that the competing proposal had come from B.V. Attached to Mr. Schoenwitz's affidavit was a letter, purportedly the cover letter for B.V.'s N–68 proposal, written on a B.V. letterhead and signed by B.V. sales director Fred Stronk. Also tendered was the cover page of the bid itself. Speroni filed a response opposing dismissal and seeking an order for discovery under Fed. R.Civ.P. 56(f).

B.V., meanwhile, was continuing its efforts to terminate the distributorship. On June 4, 1998, a second termination letter was sent to Speroni. When this proved fruitless, B.V. filed a claim in the ICC

seeking approval of the termination and an award of damages. Speroni responded with a counterclaim alleging that B.V. had committed a breach of the distributorship agreement by bidding on the N–68 project in violation of the exclusivity provisions of the agreement.

On September 9, 1998, the district court heard oral argument on Perceptron's motion to dismiss. Professing itself unable to determine from the documents on file whether it was B.V. or Perceptron that had submitted the N–68 bid, the court ordered Perceptron to present a copy of the complete bid for review by the court *in camera.* Perceptron did so.

On September 28, treating Perceptron's motion to dismiss as a motion for summary judgment, the district court granted judgment to Perceptron on both counts of the complaint. As to Count I, the court concluded on the basis of its examination of the complete N–68 bid that no reasonable jury could find that Perceptron had made the proposal. As to Count II, the court found no Michigan caselaw directly addressing the question whether a parent corporation could be held liable as a third party for interfering with the contractual relationships of its wholly-owned subsidiary. After examining precedent from other jurisdictions, however, the court concluded that the question should be answered in the negative. The court further concluded that Speroni had not pleaded any specific wrongdoing on the part of Perceptron sufficient to constitute contractual interference.

On October 23, 1998, Speroni filed its notice of appeal. When the case came before our panel, it was decided that the matter should be held in abeyance pending the resolution of the ICC arbitration proceeding. See *Speroni S.P.A. v. Perceptron, Inc.,* Order, No. 98–2192 (6th Cir. Nov. 8, 1999).

The ICC arbitrator handed down a partial award on February 12, 2001. (The award did not address damages, the propriety and quantum of which remain to be determined.) In making the award, the arbitrator accepted Speroni's contention that B.V. had submitted the competing N–68 proposal and had thereby violated its obligations under the distributor agreement.

Both Speroni and Perceptron have submitted supplemental briefs. The appeal is now ripe for decision.

## II

### A

This court reviews a grant of summary judgment *de novo.* See *United National Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 449 (6th Cir.1999). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). We may affirm a grant of summary judgment on any grounds supported by the record, even though different from the grounds relied on by the district court. See *City Management Corp. v. U.S. Chemical Co.,* 43 F.3d 244, 256 (6th Cir.1994); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985).

To establish a *prima facie* case of tortious interference with business relations, the plaintiff must show "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional or improper interference with the expectancy; and (4) resultant

damages to the party whose relationship or expectancy has been disrupted." *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 469 (6th Cir.1996) (citing *Michigan Podiatric Medical Ass'n v. Nat'l Foot Care Program, Inc.*, 175 Mich.App. 723, 735, 438 N.W.2d 349, 354 (1989)).

To survive the motion for summary judgment with respect to Count I of its complaint, Speroni must establish, among other things, that there is a genuine issue of material fact as to whether Perceptron submitted the N–68 proposal. Speroni cannot meet this burden because Speroni is judicially estopped from asserting that Perceptron made the N–68 bid.

■ The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with a position unequivocally and successfully asserted by the same party in another proceeding. See *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472 (6th Cir.1988); *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598 (6th Cir.1982). The purpose of the doctrine is to protect the courts "from the perversion of judicial machinery." *Edwards*, 690 F.2d at 599. Courts have invoked a variety of metaphors to describe the doctrine, characterizing it as a rule against "playing 'fast and loose with the courts,'" *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953) (citation omitted), "blowing hot and cold as the occasion demands," *Allen v. Zurich Insurance Co.*,

667 F.2d 1162, 1167 n. 3 (4th Cir.1982), or "hav[ing] [one's] cake and eat [ing] it too," *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1177 (D.S.C.1974).

The inconsistency between the positions taken by Speroni on the question of who made the N–68 proposal seems fairly obvious. In the ICC arbitration, Speroni unequivocally asserted that B.V. submitted the bid. In the American lawsuit, on the other hand, Speroni has consistently maintained that the bid came from Perceptron.

The stance adopted by Speroni in the arbitration was successful. The arbitrator determined that B.V. had made the N–68 proposal and had violated its legal obligations in doing so. The fact that the damages phase of the arbitration has yet to occur is immaterial.[1]

In sum, "[w]hat we have in the case before us ... appears to be a knowing assault upon the integrity of the judicial system." *Reynolds*, 861 F.2d at 474. The claim asserted in the first count of Speroni's complaint is therefore foreclosed.

Even if judicial estoppel did not bar Speroni's claim, we are persuaded that the entry of summary judgment in favor of Perceptron would be proper because there remains no question of material fact as to which entity, Perceptron or B.V., submitted the N–68 proposal. Excluding the bid itself, the relevant evidence in the record concerning the origin of the proposal includes (1) the affidavit of B.V.'s managing director attesting to the fact that the pro-

---

**1.** That the other proceeding was conducted before an arbitrator rather than an Article III court is likewise immaterial. It is widely held that a position taken in arbitration can give rise to judicial estoppel. See, *e.g.*, *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6 (1st Cir.1999); *Admiral Insurance Co. v. Rushmore*, 70 F.3d 1277, 1995 WL 693335 (9th Cir. Nov. 21, 1995) (unpublished); *Fewell v. Kozak*, 1999 WL 966447 (N.D.Ill. Oct. 19, 1999) (unpublished); *American Life Ins. Co. v.*

*Parra*, 63 F.Supp.2d 480 (D.Del.1999); *Dapelo v. Banco Nacional de Mexico*, 1993 WL 159943 (S.D.N.Y. May 11, 1993) (unpublished); *Arcor, Inc. v. Textron, Inc.*, 1990 WL 84548 (N.D.Ill. June 11, 1990); *In re Cohn–Phillips, Ltd.*, 193 B.R. 757 (Bkrtcy.E.D.Va. 1996). But compare *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1332 (10th Cir.1998) (holding that the Tenth Circuit will not be bound by the doctrine of judicial estoppel in *any* proceeding).

posal was offered by B.V, not Perceptron; (2) the cover letter submitted with the bid, written on B.V.'s letterhead and signed by a B.V. sales director; and (3) the cover page of the bid.[2] Speroni has offered no evidence to show that the bid was Perceptron's.[3]

We do not agree with the district court's conclusion that a review of the complete proposal was necessary to determine who submitted the bid. Mr. Schoenwitz's affidavit is unrebutted, and Mr. Stronk's cover letter speaks for itself; both confirm that B.V. submitted the bid. The granting of summary judgment was appropriate without resort to the complete proposal. Accordingly, we need not reach Speroni's argument that the district court erred in examining the complete bid without according Speroni an opportunity to do so as well. (As a practical matter, moreover, we understand Speroni received a complete copy of the bid in the arbitration proceedings.)

#### B

Speroni also contends that the district court erred in rejecting the claim that Perceptron unlawfully induced B.V. to breach the distributor agreement. Speroni maintains that the district court was wrong in adopting a "unity of interest"

theory that precluded Perceptron from being subjected to liability as a third party to the contract. Speroni further argues that the district court should have certified the question to the Michigan Supreme Court.

It is undisputed that the substantive law of Michigan applies to this dispute. And Michigan law is clear that to succeed on a claim of tortious interference with a contract, the plaintiff must show that the alleged tortfeasor is a third party to the contract. See *Reed v. Michigan Metro Girl Scout Council,* 201 Mich.App. 10, 13, 506 N.W.2d 231, 233 (Mich.Ct.App.1993). To withstand summary judgment on this count, then, Speroni must demonstrate the existence of a genuine issue of fact as to whether Perceptron was a third party to the distributor agreement. This raises the question of whether, and under what circumstances, a parent corporation can be considered a third party to a contract entered into by its wholly-owned subsidiary. The Michigan courts have apparently not had occasion to address this question.

We are not persuaded by Speroni's claim that the district court should have certified the question to the Michigan Supreme Court. Although the district court had the option of certifying, it was by no means required to do so. When a state's highest court has not decided the applica-

---

**2.** The only corporate reference on the cover page of the bid is "PERCEPTRON La Société des Systèmes de Vision." In context, there is no reason at all to view this as a reference to Perceptron Incorporated, the Michigan corporation, as opposed to Perceptron B.V., the Dutch corporation.

**3.** Speroni suggests that it might have been able to present additional evidence had the district court not erred by denying Speroni's Rule 56(f) motion for additional discovery. In the papers submitted to the district court in this connection attorney Keith Parr stated that he had "every reason to believe that discovery, if allowed to proceed, would reveal the existence of internal communications" be-

tween Perceptron and its subsidiaries "aimed at undermining Speroni S.p.A.'s relationships with its French customers and Speroni S.p.A.'s contract with Perceptron B.V." A party invoking the protections of Rule 56(f) must affirmatively demonstrate how additional discovery will rebut the movant's showing of the absence of a genuine issue of fact. See *Emmons v. McLaughlin,* 874 F.2d 351, 356–57 (6th Cir.1989). Here, the additional discovery sought by Speroni was immaterial to the question of whether B.V. or Perceptron submitted the N–68 proposal. Accordingly, the district court did not abuse its discretion in denying additional discovery.

ble law, a federal court is empowered to ascertain the state law from "all relevant data," including state intermediate appellate court decisions, state supreme court dicta, judicial decisions from other jurisdictions, restatements of law, and law review commentaries. See *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995), citing *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985). Here, as we shall see, the district court had an abundance of authority on which to base its conclusion that Perceptron could not be held liable.

In a recent survey of state law concerning claims for tortious interference, the Second Circuit found that "[c]ourts in other states have *uniformly* found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform." *Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir.1995) (holding that a parent corporation could not be held liable in tort for directing its wholly-owned subsidiary to stop paying rent under an unprofitable lease). (Emphasis supplied.) The Second Circuit decision is consistent with *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988), where we held under Ohio law that a parent company is privileged to interfere with the contracts of its subsidiary in or-

der to further its legitimate business interests.[4] The Fifth Circuit reached a similar result in *Deauville Corp. v. Federated Department Stores*, 756 F.2d 1183, 1196–97 (5th Cir.1985), where, applying Texas law, the court held that because a parent and its subsidiary are so closely aligned, a parent corporation is incapable of tortiously interfering with the business relations or contracts of its subsidiary. Speroni maintains, however, that an exception to the general rule arises when the parent has utilized "wrongful means" or "acted with an improper purpose." Perceptron does not dispute the point, and the case law seems to bear it out. See, *e.g., Boulevard Associates*, 72 F.3d at 1037 ("Most states affording a privilege ... have recognized that certain behavior may be sufficiently egregious to cross the line and become tortious"); *T.P. Leasing Corp. v. Baker Leasing Corp.*, 293 Ark. 166, 171, 732 S.W.2d 480, 483 (1987) ("[A] parent corporation's privilege permits it to interfere with another's contractual relations ... absent clear evidence that the parent employed wrongful means or acted with an improper purpose").

Speroni's problem is that its complaint makes no averment of wrongful means or an improper purpose on Perceptron's part. The closest the complaint comes to this is in ¶ 34, which avers that "Perceptron has acted with malice in interfering with Sper-

---

**4.** *Canderm* recognized that "Ohio courts have approved what other courts have referred to as 'the well-recognized privilege of officers, directors, officers, and creditors to interfere with contracts in the furtherance of their legitimate business interests ....' " *Id.*, quoting *Int'l Mining Co., Inc. v. Allen & Co., Inc.*, 567 F.Supp. 777 (S.D.N.Y.1983). As the district court pointed out in the case at bar, several Michigan cases have echoed this principle in holding corporate agents not liable for tortious interference with the corporation's contracts, unless they act for their own benefit with no benefit to the corporation. See, *e.g.*,

*Reed*, 201 Mich.App. at 13, 506 N.W.2d 231; *Bradley v. Philip Morris, Inc.*, 194 Mich.App. 44, 50–51, 486 N.W.2d 48, 50 (Mich.Ct.App. 1991), *rev'd on other grounds, Feaheny v. Caldwell*, 175 Mich.App. 291, 305–306, 437 N.W.2d 358, 364–65 (1989). Thus, although the Michigan courts have never squarely addressed the question of whether a parent corporation can be guilty of tortiously interfering with its wholly-owned subsidiary's contract, the law of Michigan seems clear that a claim for contractual interference will not lie where the alleged tortfeasor and one of the parties to the contract have a unity of interest.

oni's contract with [B.V.] and had no justification for its actions." As we have held in this context, however, "the addition of an averment of malice does not change a contractual action into one in tort." *Canderm*, 862 F.2d at 602, quoting *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976). Speroni has not stated a claim for contractual interference.

AFFIRMED.