RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KNIGHT CAPITAL PARTNERS CORPORATION,

　　　　　　　　　　　　　*Plaintiff-Appellant*,

　　v.

HENKEL AG & COMPANY, KGaA,

　　　　　　　　　　　　　*Defendant-Appellee*.

No. 18-2189

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-12022—David M. Lawson, District Judge.

Argued:  May 10, 2019

Decided and Filed:  July 16, 2019

Before:  ROGERS, DONALD, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  Jamie Warrow, KICKHAM HANLEY PLLC, Royal Oak, Michigan, for Appellant.
Atif N. Khawaja, KIRKLAND & ELLIS LLP, New York, New York, for Appellee.
**ON BRIEF:**  Jamie Warrow, Gregory D. Hanley, KICKHAM HANLEY PLLC, Royal Oak,
Michigan, for Appellant.  Atif N. Khawaja, KIRKLAND & ELLIS LLP, New York, New York,
Daniel A. Bress, KIRKLAND & ELLIS LLP, Washington, D.C., Thomas W. Cranmer, MILLER
CANFIELD, Troy, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

　　BERNICE BOUIE DONALD, Circuit Judge.  This case arises from a failed negotiation
regarding a potential distribution agreement.  The involved entities are a threesome: Knight

Capital Partners Corp. ("KCP"), the plaintiff who had hoped to act as a middleman in a potential distribution deal for a novel cleaning product; Henkel Corporation, a large industrial and consumer products company that KCP targeted as a potential distributor; and Henkel AG & Company, KGaA ("Henkel KGaA"), the only named-defendant and the parent company of Henkel Corporation. KCP places the blame on Henkel KGaA for the failed negotiations.

The shorthand version is that KCP and Henkel Corporation entered into a non-disclosure agreement ("NDA") to aid in the negotiations of a potential distribution deal. Pursuant to the NDA, KCP would provide Henkel Corporation with confidential information about a purportedly novel cleaning product. Following a year of exchanging information and engaging in negotiations, the NDA lapsed, no deal was consummated, and the parties discontinued commercial communication. KCP asserts that Henkel Corporation's parent company, Henkel KGaA, used confidential information it acquired through the NDA to develop the product on its own and also interfered with the potential distribution deal.

Accordingly, KCP filed a lawsuit against Henkel KGaA for breach of the NDA and tortious interference. The district court granted summary judgment in favor of Henkel KGaA on both claims. As to the breach of contract claim, the district court found that Henkel KGaA was not a party to the NDA and thus could not be liable for its breach. As to the tortious interference claim, the district court found that Henkel KGaA is the parent company of Henkel Corporation, so the parent-subsidiary privilege immunizes it from a tortious interference claim involving its subsidiary; further, the district court found that the narrow "improper motive" exception to that privilege does not apply. KCP appeals each aspect of the district court's summary judgment order. KCP also appeals the district court's denial of its motion for sanctions and its motion to amend.

For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment to Henkel KGaA, **AFFIRM** the district court's denial of KCP's motion to amend, and **REVERSE** and **REMAND** the district court's order denying KCP's motion for sanctions.

## ANALYSIS

### A. Standard of Review

We review the district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 894–95 (6th Cir. 2004). Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Henkel KGaA, as the moving party, bears the initial burden of demonstrating the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may do so by offering affirmative evidence that negates an element of KCP's claims or by pointing to an absence of evidence to support KCP's claims. If Henkel KGaA satisfies its burden, KCP must then set forth the specific facts showing that there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In evaluating the evidence, we draw all reasonable inferences in favor of KCP. *Blackmore*, 390 F.3d at 895 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). KCP must put forth more than a mere "scintilla" of evidence to survive summary judgment; the jury must be able to reasonably find for KCP. *Anderson*, 477 U.S. at 252.

### B. Breach of Contract Claim

KCP first claims that Henkel KGaA violated the terms of the NDA by using its confidential information in ways not permitted under the NDA. The district court found that Henkel KGaA cannot be sued for breach of the NDA because Henkel KGaA was not a party to that contract. We agree with the district court.

#### i.     Terms of the NDA

KCP is a private equity investment firm that was created for the "sole purpose" of negotiating a distribution deal with Henkel Corporation. KCP "believed that Henkel Corporation with its established connections and brand recognition . . . would be a great fit to work with KCP to fully realize the Technology's potential . . . ." Following a February 2014 meeting with KCP, Henkel Corporation showed initial interest in the deal. To that end, both entities executed an

NDA so that KCP could provide Henkel Corporation with confidential information about the product. That NDA serves as the basis of KCP's breach of contract claim. Its important features are detailed below.

First, it is undisputed that, under the NDA's terms, the "Parties" are KCP and Henkel Corporation (but not Henkel KGaA): the preamble identifies them as such and only representatives from KCP and Henkel Corporation signed the document. Second, Henkel Corporation was permitted to share the confidential information it received with its "Affiliates," defined as "any individual, corporation or other business entity which, either directly or indirectly, controls a Party, is controlled by a Party, or is under common control with a Party." Henkel KGaA falls under this definition as Henkel Corporation's parent company. Further, any entity—including an Affiliate—that received confidential information was deemed a "Receiving Party." Third, Receiving Parties were permitted to use the confidential information for the sole "Purpose" of "investigat[ing] the feasibility of a future business relationship between [KCP and Henkel Corporation.]" Fourth, a Receiving Party was allowed to independently develop competing products, so long as the Receiving Party did not "use or disclose the Disclosing Party's Confidential Information in breach of [the] Agreement." Fifth, no party was permitted to assign the agreement to a third party—including to "any Affiliate" (e.g., Henkel KGaA)—without providing notice to the other party. Sixth, the NDA included a full-integration clause, and any alterations were required to be in writing. Finally, the NDA permitted disclosures for one year (up to April 23, 2015), but called for "the obligations of confidentiality" to last for three years (up to April 23, 2018).

### ii.     Henkel KGaA Not a Party to the NDA

We apply Connecticut law pursuant to the NDA's choice-of-law provision to determine if Henkel KGaA can be liable for breach of the NDA. It is axiomatic that "only parties to contracts are liable for their breach." *FCM Grp., Inc. v. Miller*, 300 Conn. 774, 797, 17 A.3d 40, 54 (Conn. 2011). "A person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms." *Id.* (quotation marks omitted). Henkel KGaA is not named in the NDA and did not execute it; ordinarily, that would be the end of our breach of

contract inquiry.  However, KCP argues that Henkel KGaA eventually became a party to the contract by assenting to be bound by it.

KCP relies on two pieces of evidence to buttress its claim of assent: 1) statements made by Grant Kupko, a Henkel KGaA employee, and 2) two internal Henkel KGaA documents.[1]  As described below, this evidence, when viewed in the light most favorable to KCP, demonstrates that Henkel KGaA agreed not to misuse the confidential information it received pursuant to the NDA.  What it does not demonstrate, however, is that Henkel KGaA became a party to the NDA.

The first piece of evidence is a declaration from KCP's founder and CEO.  In it, she explains that "when Henkel KGaA became involved in the Project in 2014 its representative, Grant Kupko, expressly represented to me that Henkel KGaA was bound by the NDA."  On a subsequent conference call, KCP's CEO "asked Kupko if we needed to sign another NDA with Henkel KGaA and he stated to me: no, we are covered under the NDA that was signed already."  A Henkel Corporation representative also affirmed to KCP that "Kupko was bound by the NDA . . . ."  In his deposition, Kupko agreed that he was "bound by [the NDA] as an affiliate of Henkel Corporation."

The second group of evidence includes two internal Henkel KGaA documents.  The first, a PowerPoint presentation containing a bullet point that reads, "[l]egal recommendation that organic Henkel product development could take place IF all development work was based on internal information and knowledge with no use of information gained through NDA."  The second, an email chain from June 2015 wherein a Henkel KGaA employee states that they are "clear to go with AIS," meaning they are clear to negotiate a distribution deal with the actual supplier of the product instead of going through KCP, and that "[l]egal risk does exist but not very solid ground as long as we keep KCP off the loop."

---

[1]KCP also cites two additional emails in its brief, but it provides no explanation of their significance. Appellant Br. at 25.  We do not consider these additional emails because it is not in the Court's purview to manufacture a party's theory of the case.  *See ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 585 (6th Cir. 2018) ("it is a party's burden to tell us and make the argument because '[j]udges are not like pigs, hunting for truffles' that might be buried in the record.'" (quoting *Emerson v. Novartis Pharm. Corp*., 446 F. App'x. 733, 736 (6th Cir. 2011))).

Viewing this evidence in the light most favorable to KCP, Henkel KGaA represented to KCP that it was "bound" by the NDA not to misuse the confidential information. Under Connecticut law and the language of the NDA, this representation did not—and could not—transform Henkel KGaA into a party to the NDA.

### iii.      Third-Party Beneficiary Contracts

As legal support for its assent theory, KCP cites two Connecticut cases and two Delaware cases that it contends show that a non-party becomes a party to a contract when the non-party agrees not to violate the contract's terms. This argument is an overreach. At most, these cases set forth what third-party-beneficiary contracts are, e.g., when a "promisor agrees with a promisee to render a performance to a third party instead of to the promisee." 13 Williston on Contracts § 37:1 (4th ed. 2012). The NDA is not a third-party-beneficiary contract: it was explicitly executed for the "Purpose" of facilitating a relationship between the two signatories, KCP and Henkel Corporation, not third-party Henkel KGaA. As described in further detail below, the cases KCP relies upon do not support its theory of assent.

KCP initially seizes upon a single sentence in *Bruno v. Whipple*, wherein the court stated that "it is a fundamental principle of contract law that liability for breach of contract is confined to contracting parties or those who consent to be bound by them." 54 A.3d 184, 191 (Conn. App. Ct. 2012) (citing *FCM Group, Inc. v. Miller*, 300 Conn. 774, 797, 17 A.3d 40, 54 (Conn. 2011)). Although the last line of that sentence—"or those who consent to be bound by them"—appears to be helpful for KCP, it amounts to surplusage. In *Bruno*, the court was deciding whether a general denial of liability in an answer was sufficient to maintain a defense of being a non-party to a contract. It answered that very specific question in the affirmative. In that line of analysis—where the specific sentence KCP recites is found—there was no discussion of how a third party could "consent to be bound" to a contract because that question was immaterial to the issue presented. *See id.* Accordingly, we afford that specific statement in *Bruno* no weight in our analysis of Connecticut law.

The facts of *Bruno*, on the other hand, do command weight in the present case. Although the defendant there had signed the underlying contract on behalf of his company, and the

allegations of breach arose from his personal conduct in executing the contract, the court found he was not liable for breach because he was not a party to the contract. *Id.* at 498–99, 509. If anything, *Bruno* weakens KCP's theory of assent because it establishes that a party may participate in the execution of a contract without becoming personally liable for its breach.

Similarly, in the other Connecticut case KCP cites, the court granted summary judgment to a defendant who had not signed the underlying contract. *Malich v. Sivilla*, No. CV126016748S, 2013 WL 3625476, at *5 (Conn. Super. Ct. June 24, 2013). Even though the contract was executed to improve her home, and she inspected the work, the court found the defendant was not a party to the contract because she had not personally signed it and had never agreed "to pay the plaintiff for that work." *Id.*[2] *Malich* is clearly not a slam dunk for KCP. Not only is it a Superior Court case, meaning it carries minimal weight in defining Connecticut law for our purposes, *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018), its principal holding is that an individual may directly participate in the execution of a contract without necessarily becoming a party to that contract. Here, Henkel KGaA participated in the NDA by receiving information and agreeing not to misuse that information, much like the defendant oversaw and directed the home improvement work in *Malich*. Under *Malich*, that participation does not amount to becoming a party liable for breach of the contract.

The two Delaware cases KCP cites also fall short because, as KCP concedes, they explicitly describe third-party-beneficiary contracts, whereby the contracts themselves "contemplate that third parties might adopt [them]." Appellant Br. at 19 (citing *In re Fed.-Mogul Glob., Inc.*, 526 B.R. 567, 570 (D. Del. 2015) and *American Legacy Foundation v. Lorillard Tobacco Co.*, 831 A.2d 335, 343-44 (Del. Ch. 2003)); *see also* 13 Williston on Contracts § 37:1 (4th ed. 2012) (describing third-party beneficiary contracts, which "arise[] when a promisor agrees with a promisee to render a performance to a third party instead of to the promisee, . . . ."). Nothing in the NDA states that it was executed for the benefit of a third party or contemplates that a third party might unilaterally adopt it. To the contrary, the NDA has a full integration clause; requires any changes to be in writing; and any assignment—including to an

---

[2]A man who shares the defendant's same last name—presumably her husband, brother, or father—signed the contract and agreed to pay for the work, making him the potentially liable party.

Affiliate such as Henkel KGaA—must be approved by the other party. The Delaware authority on which KCP relies, in addition to being from the wrong state, has no bearing on the facts of this case.

The legal authority KCP cites does not support its expansive theory that, under Connecticut law, a third party can become a party to any contract by agreeing to follow the terms of the contract. KCP's assent argument thus fails. We turn next to the language of the NDA to evaluate what impact Henkel KGaA's representations that it was "bound" by the contract may have had.

### iv.    The Intent of the Parties

In a breach of contract case, our ultimate task is to ascertain the intent of the parties, which is governed primarily by the language of the contract. *Lynwood Place, LLC v. Sandy Hook Hydro, LLC*, 150 Conn.App. 682, 688, 92 A.3d 996, 1001 (Conn. App. 2014). Here, the language of the NDA makes clear that the parties to the contract—KCP and Henkel Corporation—intended for Henkel KGaA to receive confidential information, to be obligated not to misuse that confidential information, and to do so without becoming a party to the contract.

It is undisputed that, under the terms of the NDA, the "Parties" are Henkel Corporation and KCP. Although those are the only two parties, the NDA carved out specified roles for non-parties: it permitted Henkel Corporation to provide confidential information to its Affiliates, including to Henkel KGaA, and it further prohibited those Affiliates from misusing the confidential information. Connecting those dots, Henkel KGaA's representation that it was "bound by the NDA" is tantamount to reaffirming its obligations *as a Receiving Party* that are explicitly set forth within the NDA, rather than agreeing to become a party to the NDA.

Further, the NDA includes a non-assignment provision that covers Henkel KGaA. Had Henkel Corporation intended to assign its rights and obligations to Henkel KGaA, it would have had to give prior notice to KCP. The existence of the non-assignment provision demonstrates that Henkel KGaA was not considered to be a contracting party despite the fact that it received confidential information. Indeed, to consider a counter-factual, could Henkel KGaA have brought its own breach of contract claim against KCP on the sole basis that Henkel KGaA had

represented it was bound by the NDA?  The answer is no.  Under the plain language of the contract, therefore, Henkel KGaA was operating as it was intended to operate: as a Receiving Party, not a contracting party.**3**

Henkel KGaA is not a party to the NDA, so it cannot be sued for breach of the NDA. The district court properly granted summary judgment in favor of Henkel KGaA on KCP's breach of contract claim.

## C. Tortious Interference

In its second claim, KCP claims that Henkel KGaA tortiously interfered with a valid business expectancy and relationship KCP had with Henkel Corporation.  The parties agree that the tortious interference claim is governed by Michigan law.  Under Michigan law, a parent company cannot tortiously interfere with the affairs of its wholly-owned subsidiary.  *See Speroni S.P.A. v. Perceptron, Inc.*, 12 F. App'x 355, 360 n.4 (6th Cir. 2001) (citing Michigan cases). Henkel KGaA is Henkel Corporation's parent company.  Therefore, Henkel KGaA cannot have tortiously interfered with Henkel Corporation's relationship with KCP as a matter of law. KCP resists this conclusion on two fronts: first, it argues that it is not clear whether Henkel KGaA is Henkel Corporation's parent company; and second, even if Henkel KGaA were Henkel Corporation's parent company, KCP argues that Henkel KGaA is not immunized from a tortious interference claim because it acted with an improper motive or means.  We find neither of these arguments persuasive.

---

**3**At oral argument, KCP put forth a new argument as to why it could sue Henkel KGaA for breach of contract, relying on the equitable-relief provision of the contract.  The equitable relief provision of the contract lists equitable relief that is available, and then states that "[s]uch [equitable] remedies will not be deemed to be the exclusive remedies for a *breach of this Agreement by the Receiving Party*, but will be in addition to all other remedies available at law or in equity."  R. 1-2 at PageID 53 (emphasis added).  KCP argues that the italicized language demonstrates that Receiving Parties, such as Henkel KGaA, can be liable for breach because the contract contemplated that such entities could breach it.  KCP is incorrect.  First, the contract cannot bind non-parties, and Henkel KGaA was not a party to the contract at the time of its execution.  Second, the preposition "by" indicates that a Receiving Party's actions may be prohibited by the contract, but it does not indicate that the Receiving Party can be personally sued for those actions.  The more convincing preposition for that argument would have been "against."

###### i.       Henkel KGaA and Henkel Corporation Corporate Relationship

KCP's first argument is that Henkel KGaA is not Henkel Corporation's parent company. The evidence clearly shows otherwise. First, Henkel KGaA produced a "published annual report of corporate entities" from 2014 stating that Henkel KGaA is "the parent company of the Henkel Group," which in turn holds 100% of the shares of Henkel Corporation. Second, Henkel KGaA submitted a declaration from its Associate General Counsel, who declared that "[s]ince at least January 1, 2013, and for all times relevant to the claims in this case, Henkel Corporation has been wholly owned by Henkel KGaA." These documents overwhelmingly illustrate that Henkel KGaA is Henkel Corporation's parent company.

Undeterred, KCP points to a single PowerPoint slide that it contends displays the true corporate structure of Henkel, pictured below:



KCP asserts that this slide shows that Henkel KGaA only owns 70.58% of Henkel of America, Inc., which in turn owns 100% of Henkel Corporation. The syllogism KCP paints is that: 1) some other unidentified entity must own the remaining ~30% of Henkel of America, Inc., 2) that other unidentified entity must also own the remaining ~30% of Henkel Corporation, and thus 3) Henkel KGaA does not own 100% of Henkel Corporation. In response, Henkel KGaA points to the very next slide in the same presentation, pictured below, which shows that Henkel KGaA does hold 100% of Henkel Corporation:



On that next slide, the unaccounted for ~30% ownership stake in Henkel of America, Inc. is vested in wholly-owned subsidiaries of Henkel Corporation, which itself is wholly owned by Henkel America. In other words, reviewing the four rows of business entities in the slide, it is clear that they are all self-contained, as represented by the arrows going both down *and up*. Although the corporate structure is certainly complicated, it nevertheless shows that complete ownership of Henkel Corporation flows from Henkel KGaA. The PowerPoint presentation, therefore, does not create a genuine dispute about the corporate relationship between Henkel KGaA and Henkel Corporation. Because Henkel KGaA is the parent company of Henkel Corporation, it cannot be liable for tortiously interfering with Henkel Corporation's business expectancy.

### ii.     Improper Means or Motive

KCP next argues that even if Henkel KGaA is Henkel Corporation's parent company, Henkel KGaA can still be liable for tortious interference under a limited "improper motive"

exception.    Pursuant to the exception, a parent company may face liability for tortious interference with its wholly-owned subsidiary "when the parent has utilized 'wrongful means' or 'acted with an improper purpose.'" *Speroni S.P.A.*, 12 F. App'x at 360.  KCP cites no Michigan case recognizing this exception, but Henkel KGaA apparently concedes that the exception applies in Michigan, and as we have noted before, "the case law seems to bear [the exception] out."  *See id.* (citing *Boulevard Assoc. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1037 (2d Cir. 1995) and *T.P. Leasing Corp. v. Baker Leasing Corp.*, 732 S.W.2d 480, 483 (Ark. 1987)).  In *Speroni*, we did not discuss with any specificity what might constitute "wrongful means" or "improper purpose," but we did reject a plaintiff's attempt to apply the exception based on a single, isolated allegation that the defendant "acted with malice in interfering with [the contract] and had no justification for its actions."  *Id.* at 360–61.  Even if Michigan has adopted this exception, none of the evidence KCP puts forward creates a genuine issue as to whether Henkel Corporation acted with a sufficiently improper motive or means to pierce the parent-subsidiary privilege.

It is well-settled under Michigan law that a desire to maximize one's own business interests is a legitimate reason to interfere with one's wholly-owned subsidiary's business expectancy; in other words, it would not have been improper for Henkel KGaA to have nixed the distribution deal even if its sole motivation was to maximize its own profits.  *Urban Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x 495, 514 (6th Cir. 2007).  For instance, in *Boulevard Assocs.*, a case cited favorably in our decision in *Speroni*, the Second Circuit held that a parent company "simply direct[ing] its subsidiary, as it could do through the appropriate channels of corporate command," to breach a contract did not rise to the level of wrongful means or improper purpose necessary to pierce the parent-subsidiary privilege.  72 F.3d at 1037.  That appears to be exactly what KCP argues that Henkel KGaA did: convinced its own wholly-owned subsidiary not to contract with KCP, which is not wrongful or improper.  Alternatively, when envisioning what behavior *could* satisfy the exception, the Second Circuit described a sole shareholder holding the president of her company "at gunpoint" to breach a contract with a third party, or that same shareholder "using fraudulent misrepresentations" to "deceive a third party

into breaching its contract with the shareholder's own company." *Id.* Those facts do not fit this case.[4]

KCP specifically avers that Henkel KGaA acted improperly by doing the following: 1) misrepresenting that it was bound by the NDA; 2) accepting KCP's confidential information; and 3) utilizing the confidential information "to attempt to circumvent KCP" and develop the product on its own and deal with KCP's supplier contact directly. Appellant Br. at 33. The first two allegations are not improper given the fact that the NDA permitted Henkel KGaA to receive and use KCP's confidential information. The third allegation, while potentially in breach of the NDA, does not come close to "holding a gun" to Henkel Corporation's head. *Boulevard Assocs.*, 72 F.3d at 1037. KCP has not presented sufficient evidence of any improper motive or means to pierce the parent-subsidiary privilege. The district court was correct in granting summary judgment in favor of Henkel KGaA on KCP's tortious interference claim.

## D. Motion to Amend

On the day before discovery closed, KCP filed a motion to amend its complaint to add a new claim arising under the Connecticut Unfair Trade Practices Act. The district court found that granting the motion would cause undue prejudice to Henkel KGaA and thus denied it.[5] Because the district court denied the motion on the basis of undue prejudice, we review its decision for an abuse of discretion. *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997).

The Federal Rules of Civil Procedure instruct district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Guided by that overarching

---

[4]KCP attempts to broaden the exception beyond the facts set forth in *Boulevard Assoc.*, relying instead on a series of other out-of-circuit and district court cases that describe "using confidential information" as an improper means of interfering with business relations. Appellant Br. at 32 (citing *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629 (M.D. Tenn. 2006), *Coloplast Corp., v. Am. Breast Care, L.P.*, 209 F. App'x 945 (11th Cir. 2006), and *Wood v. Archbold Med. Ctr., Inc.*, 738 F. Supp. 2d 1298 (M.D. Ga. 2010)). However, none of those cases dealt with the parent-subsidiary privilege. In *Freeman Mgmt. Corp.*, the court found that the subsidiary was not wholly owned so the privilege did not apply, 461 F. Supp. 2d at 638; in *Coloplast Corp.*, the Eleventh Circuit considered claims against the defendant for recruiting employees from a wholly distinct company, 209 F. App'x at 946; and in *Wood*, the court considered a solicitation claim lodged against an unrelated company, 738 F. Supp. 2d at 1369. The parent-subsidiary privilege was thus not at issue in any of those cases.

[5]The district court also found that the proposed amendment would be futile, but we do not reach that question on appeal because the district court's order on the motion to amend is affirmed on other grounds.

principle, the district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005). The district court in this case found that several of those factors weighed against granting amendment. First, KCP waited until the last moment to file its motion, and further, it did not provide an explanation for the timing of its filing. Second, granting the amendment would have significantly disrupted the trial schedule and required re-briefing on a contentiously-litigated motion for summary judgment. Last, the amendment was not *de minimis*; it asserted "a new claim, on a new legal theory, under the law of a completely different jurisdiction than the tort claim pleaded in the original complaint." Because KCP's request was both delayed and would have caused undue prejudice to Henkel KGaA, the district court denied it.

KCP has not established that the district court abused its discretion in denying the motion to amend. KCP asserts in its briefing that it simply wished to add facts adduced during discovery to the complaint, meaning Henkel KGaA would not have suffered any prejudice were the amendment granted. Appellant Br. at 53. This assertion is false. KCP sought to add, as the district court noted, a brand-new claim from a different jurisdiction resting on a distinct legal theory. It also asked to do so on the day before discovery closed, thus raising an inference of prejudice against its opponent. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (collecting cases from this circuit and others that have found that "allowing amendment after the close of discovery creates significant prejudice"). Had KCP explained its tardiness, it may have shown that the timing of the motion—by itself—was not sufficient to deny the motion outright. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("Ordinarily, delay alone, does not justify denial of leave to amend."). KCP did not provide such an explanation, either to the district court or to this Court. Accordingly, the district court did not abuse its discretion in denying the motion to amend.

### E. Motion for Sanctions

On April 20, 2018, KCP filed a motion for sanctions with the district court, requesting, *inter alia*, attorney's fees and costs related to reviewing documents that Henkel KGaA over-

designated as Attorney's Eyes Only.  The district court denied KCP's sanctions motion as moot after granting summary judgment to Henkel KGaA.  The sanctions motion, however, was not moot.  Although the merits of KCP's claims were decided at that point, the sanctions motion was directed at a collateral issue.  District courts retain jurisdiction to consider collateral issues, such as motions for attorney's fees, even after entry of judgment on the merits.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).  The district court should have considered and ruled on the merits of KCP's sanctions motion.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Henkel KGaA, **AFFIRM** the district court's denial of KCP's motion to amend, and **REVERSE** and **REMAND** KCP's sanctions motion for full consideration.