**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Case No. 08-5524**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDERSON-TULLY COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| FEDERAL INSURANCE COMPANY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AON RISK SERVICES OF MISSOURI, | ) | |
| INC., AON FINANCIAL SERVICES | ) | |
| GROUP, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: BATCHELDER, Chief Judge; NORRIS and KETHLEDGE, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.** In this state-law tort claim by an insured against

its insurance broker — which arises in the context of an insurance-coverage dispute — the district

court granted summary judgment in favor of the broker. For the reasons that follow, we affirm.

**I.**

Anderson Tully Company (ATCO) is a large, privately owned lumber company; it owns

thousands of acres of hardwood timberland and operates several sawmills in Tennessee, Mississippi,

Louisiana, and Arkansas.  Aon[1] is an insurance broker and Federal Insurance Co. is an insurer. Federal provided ATCO (via Aon) with a claims-made policy for Directors & Officers Liability Coverage, for the period from June 1, 2002 to July 1, 2003.  Two provisions in the policy warrant mention.  First, the "Related Claims" provision states that "[a]ll Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made."  The policy defines "Related Claims" as:

> [A]ll Claims or Wrongful acts based upon, arising from, or in consequence of the same or related facts, circumstances, situation, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

Second, the "Insured vs. Insured" ("I v. I") provision excludes any claim brought by an officer/director against another officer/director, unless the accuser/claimant had not been an officer/director for at least four years preceding the claim.

Three of ATCO's officers resigned during 1999:  Bartlett Tully Lewis (vice-president) resigned on January 1, 1999; Parnell S. Lewis Jr. (president) resigned on June 22, 1999; and Martin S. Lewis (vice-president) resigned on August 26, 1999.  These three, later dubbed "the Lewis Plaintiffs," were not merely officers, they were brothers from one of ATCO's founding families, and they did not go quietly.  As early as 2001, they began writing letters to the new officers and directors, criticizing their performance, requesting proprietary information, and expressing concerns about dividend distribution and the value of their stock.  Because ATCO was a privately held company, its stock was not traded on a market and the price of that stock was not readily apparent.

---

[1]There are actually two Aon defendants:  Aon Risk Services of Missouri, Inc., and Aon Financial Services Group.  But, for purposes of this appeal, the difference is immaterial and they are referred to collectively as "Aon."

2

On April 14, 2003,[2] an attorney named Joseph Sullivan, representing Bart Lewis, sent a letter (the "Sullivan Letter") to ATCO, reiterating the criticism of ATCO's management and demanding financial information necessary to value the ATCO stock. Sullivan also threatened litigation based on the new officers' and directors' alleged mismanagement. ATCO sent the Sullivan Letter to Aon, but, for reasons that remain unclear, Aon did not send the letter along to Federal at that time.

On September 24, 2004,[3] an attorney named William Frulla, representing Bart, Martin, and Parnell Lewis (along with the Helen Tully Lewis Trust), sent a letter (the "Frulla Letter") to ATCO, complaining that ATCO had failed to provide "sufficient information about the corporation [so as] to establish a fair and full value for their shares of ATCO stock" and demanding $15 million. Frulla attached a draft complaint naming ATCO directors and officers as defendants. On October 7, 2004, ATCO sent the Frulla Letter (and a copy of the Sullivan Letter) to Federal as "notice of a claim."

On November 29, 2004, Frulla filed the complaint in state court, initiating the Lewis Plaintiffs' lawsuit against ATCO. ATCO sought coverage from Federal under the policy, but Federal denied coverage on the basis that the notice of the claim was untimely, inasmuch as ATCO had made the claim on October 7, 2004, but the policy had expired on July 1, 2003. Aon intervened and explained that ATCO had submitted the Sullivan Letter, and hence filed a notice of claim, back in May 2003, so the original notice of claim was within the policy period. On March 24, 2005, Federal reversed its (un)timeliness decision and deemed the Sullivan Letter a timely notice of claim. But Federal denied coverage nonetheless, on the basis of the Insured vs. Insured Exclusion.

---

[2]Note that this was within the claims-made policy term (June 2002 to July 2003). Note also that this was less than four years after either Parnell or Martin had resigned (June 22, 1999, and August 26, 1999, respectively).

[3]Note that this was outside of the claims-made policy term (June 2002 to July 2003). Note also that this was more than four years after Martin — the last of the plaintiffs to resign — had resigned (August 26, 1999).

On July 29, 2005, ATCO filed the present lawsuit in state court, naming Federal and Aon as defendants and seeking declaratory judgment to establish coverage under the policy. The defendants removed the case to federal court on diversity grounds, ATCO amended its complaint (seeking damages for negligence, breach of contract, breach of fiduciary duty, and various other state-law claims), and Aon moved to dismiss. Meanwhile, in October 2005, ATCO was sold for $465 million — approximately $500,000 per share — and sometime thereabout, ATCO settled with the Lewis Plaintiffs for $9.9 million.

On April 27, 2006, the district court granted Aon's motion to dismiss the negligence claim, finding that, although Aon had had a duty to notify Federal of the Sullivan Letter and Aon had failed in that duty, Aon's failure to fulfill that duty was not the proximate cause of the denial of coverage. Therefore, the court concluded, Aon could not be held liable under that negligence theory.

Federal thereafter moved for summary judgment, which the district court denied. In so doing, the court stated three conclusions: (1) the Sullivan Letter was a "claim" as defined in the policy; (2) the three claims — the Sullivan Letter, the Frulla Letter, and the complaint — were to be treated as a single claim made on the date of the earliest of them (i.e., on April 13, 2003, the date of the Sullivan Letter), pursuant to the Related Claims provision; and (3) genuine issues of fact existed as to whether ATCO's claims were properly excluded by the Insured vs. Insured provision. For these same reasons, the court correspondingly denied a summary-judgment motion by ATCO.

Shortly thereafter, Aon moved for summary judgment on the remainder of its claims, which prompted ATCO to file a cross-motion for summary judgment against Aon on those claims. On September 24, 2007, the district court granted Aon's motion for summary judgment (and denied ATCO's reciprocal motion) on the basis that — even accepting ATCO's factual accusations as true

4

— Aon's actions were not the proximate cause of ATCO's damages. The court reiterated that any negligence by Aon in failing to send the Sullivan Letter to Federal had been harmless because, ultimately, Federal had denied the claim pursuant to the I vs. I Exclusion, not because the claim was untimely.

But, if Federal had deemed the Sullivan Letter a "notice of circumstances," rather than a claim (and the Frulla Letter the "claim"), ATCO persisted, then ATCO's claim would be dated September 24, 2004, a time at which the Lewis Plaintiffs were all outside the I vs. I Exclusion's four-year window, and Federal could have had no basis on which to deny coverage. ATCO then accused Aon of convincing Federal to accept the Sullivan Letter as a claim rather than a notice of circumstances, which ATCO contends was a breach of Aon's fiduciary duty. In rejecting this accusation, the court explained that this claim, like the negligence claim, was ultimately harmless, even if true.

Finally, ATCO accused Aon of actively colluding with Federal to have the claim denied on the basis of the I vs. I Exclusion. But the district court found that ATCO had not presented any evidence of any such a collusion, whereas Aon had presented evidence that there had been no such collusion. Consequently, the district court granted summary judgment to Aon on these claims.

On November 29, 2007, the district court administratively closed the case, noting that "the parties have notified the Court that they have resolved their dispute [but] have not completed the paperwork to memorialize the resolution." Otherwise stated, the court noted that ATCO and Federal had agreed to a settlement, but could not execute the settlement until after the first of the year.

On January 14, 2008, the attorneys for ATCO and Federal moved the court to reopen the case and filed a "Joint Stipulation of Dismissal with Prejudice." This stipulation states, in its entirety:

> Pursuant to Rule 41(a)(1)(ii)[4] of the Federal Rules of Civil Procedure, Plaintiff, Anderson-Tully Company ('ATCO'), and Defendant, Federal Insurance Company ('Federal'), file this Stipulation of Dismissal, and jointly request that the Court dismiss all claims and causes of action that were asserted by ATCO against Federal with prejudice, with neither party to be obligated to the other for its fees and costs. A proposed Agreed Order of Dismissal has been submitted at the time of this filing.

So, while purporting to act pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) (dismissal *without* a court order), the parties actually "request[ed] that the [c]ourt dismiss [the] claims" and even attached a draft order for the court's convenience. On that same day (Jan. 14, 2008), ATCO also moved the court to reconsider its September 24, 2007, grant of summary judgment to Aon, and moved the court for leave to amend its complaint against Aon, essentially seeking to proceed against Aon to recover attorneys' fees and the costs of the just-concluded litigation.

On March 25, 2008, the district court denied ATCO's motions, explaining that Aon was not liable to ATCO under any set of circumstances, and refusing to permit amendment of the complaint or to reconsider the grant of summary judgment. Moreover, the court explained that ATCO had not identified any statutory or contractual basis upon which it could justify the recovery of costs and attorneys' fees, particularly in light of the fact that ATCO had not prevailed on its claims against Aon.

On April 18, 2008, ATCO appealed, and on December 5, 2008, Aon moved this court to dismiss the appeal as untimely and therefore beyond our jurisdiction. We address Aon's jurisdictional motion before proceeding to consider the merits of ATCO's appeal.

## II.

Aon has moved to dismiss this appeal, arguing that ATCO's notice of appeal was untimely.

---

[4]ATCO mistakenly cited the former rule. The Rules were amended, effective December 1, 2007. In amending the Rules, this provision was reformatted and numbered as Rule 41(a)(1)(A)(ii), but was not altered substantively.

*See* Fed. R. App. P. 4(a)(1)(A) (an appellant generally has 30 days to file an appeal in a civil case). Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), a "plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." And, on January 14, 2008, ATCO and Federal — the only two parties remaining in the action — filed a "Joint Stipulation of Dismissal," which even began with the phrase: "Pursuant to Rule 41(a)(1)(ii) [sic] of the Federal Rules of Civil Procedure, . . . ." The district court entered its next order on March 25, 2008 (when it denied ATCO's outstanding motions), and ATCO appealed from that order on April 18, 2008 — 24 days after March 25, but 95 days after January 14.

Aon contends that, even without a court order, the case was final on January 14, 2008, and therefore, ATCO's notice of appeal — filed 95 days later — was untimely. Aon relies on Rule 41(a)(1)(A)(ii) for the proposition that the case could be concluded (dismissed) without a court order, and points to the "Joint Stipulation of Dismissal" as proof that it was. ATCO responds that the dismissal was not effective without a court order because it did not include the signatures of "*all* parties *who have appeared*," which would include Aon.[5] Confronted with the fact that it had appeared but had not signed the stipulation, Aon contends that, because the word "parties," when used in the Federal Rules, typically means only those entities remaining in the action, it was not a "party" — having already been removed from the action by the summary judgment — and, consequently, was not required to sign the stipulation in order to satisfy the Rule and complete the dismissal.

Neither ATCO nor Aon provides controlling case law and, in fact, both sides suggest that this

---

[5]ATCO also points out that, based on the language of the stipulation itself, this was far from a clear expression of a Rule 41(a)(1)(A)(ii) dismissal-without-a-court order, inasmuch as this stipulation expressly "request[ed] that *the Court* dismiss [the] claims" and included an appended draft order for the court's use or assistance in doing so.

7

is a matter of first impression. So, we begin at the beginning and "the starting point in interpreting statutes and rules is always the plain words themselves," *see Marek v. Chesny*, 473 U.S. 1, 16 (1985) — here: "all parties who have appeared." And we are mindful that the drafters could just as easily have written "all *existing* parties who have appeared," or "all *remaining* parties who have appeared." In fact, given Aon's argument, we note that the drafters could have just written "parties," without any qualifier at all. They did not. The drafters wrote "*all* parties who *have appeared*."

Aon argues that "all . . . who have appeared" does not enlarge the covered group to include those who were parties but have since been dismissed, excused, or removed from the action; rather, Aon argues, it limits the covered group to those who are currently parties *and* have appeared. As support for this argument, Aon explains that the word "parties" is a term of art, as used in the Federal Rules, that generally means only those entities that are *currently* parties to the action. But what is generally true is not always true. In Rule 19(b), for example, the drafters used the phrase "existing parties" to describe those parties currently in the action, and in Rule 25(a)(2), the drafters used the phrase "remaining parties." If "parties" were a term of art that *always* meant "parties currently in the action," these qualifiers — "existing" and "remaining" — would not be necessary.

Moreover, it bears at least brief mention that the termination of the litigation stage is also the initiation of the appeal stage — two sides of the same coin, as it were. Indeed, in the present case, it is only the latter that concerns Aon; having been removed from the litigation via summary judgment, Aon had no interest in the ensuing litigation between ATCO and Federal. But, as the present motion makes clear, the other side of that coin — the initiation of the appeal stage — was (and is) of significant concern to Aon, inasmuch as Aon was likely to be a party to that appeal. And it is that point that bears mention — that, once the litigation has terminated and the appeal stage has

8

begun, the word "parties" unquestionably means those entities that *were* parties to the litigation, no matter when (or how) they were removed from the litigation. So, for purposes of Rule 41(a)(1)(A)(ii), which is clearly one means of crossing the threshold between the two stages, the appeal-stage side of the threshold clearly favors our construing the phrase "all parties who have appeared" (and the word "parties" in particular) as including both current and former parties.

Lacking compelling contrary authority, we find the more prudent course is to decline the invitation to qualify the meaning of the word "parties" when the drafters could have done so themselves — such as in Rule 19(b) and 25(a)(2) — but did not. Instead, we find the plain meaning of "all parties who have appeared" to include all entities who have appeared in the action as parties. We note that this liberal construction of the Rule inflicts no significant prejudice on a plaintiff seeking to voluntarily dismiss an action. If, for whatever reason, the plaintiff cannot obtain the signatures of all those who have appeared in the action as parties, that plaintiff needs only to move for and obtain a court order formally dismissing the case, as is provided for in Rule 41(a)(2).

In this case, the attempted Rule 41(a)(1)(A)(ii) dismissal was ineffective due to ATCO's failure to procure Aon's signature, so the present case was not final until the district court issued its order on March 25, 2008. As a result, the April 18, 2008 notice of appeal was timely.

**III.**

ATCO presses three arguments on appeal: (1) that it has a valid claim against Aon for breach of fiduciary duty, such that the district court erred by granting summary judgment to Aon on that claim; (2) that it is entitled to litigation costs and attorneys' fees in this action; and (3) that it has other valid claims against Aon, such that the district court erred by refusing to allow it to amend its complaint. But, because there is no mechanism by which a losing party can obtain costs and

9

attorneys' fees from the winning party, the second argument is dependent on ATCO's prevailing on its first argument here and then prevailing in its case against Aon on remand to the district court. Similarly, because there is no means by which a losing plaintiff can amend its complaint after judgment has been entered against it, the third argument is also dependent on the first. Therefore, the first (and ultimately the only) question in this appeal is whether the district court erred by granting summary judgment to Aon on ATCO's breach of fiduciary duty claim. And the answer is "no."

The district court granted summary judgment to Aon upon finding that, even though Aon had breached its fiduciary duty to ATCO by failing to submit the Sullivan Letter timely, that failure did not cause ATCO's harm. Rather, the sole cause of ATCO's harm (the absence of coverage) was Federal's decision to deny coverage based on its interpretation and application of the policy, specifically the I v. I Exclusion. Moreover, as the court found, Aon did not affect this decision.

ATCO contends that the district court misunderstood the nature of its harm and, therefore, the nature of its claim. ATCO contends (1) that the harm in question is not the absence of insurance coverage but rather the cost of bringing this lawsuit (i.e., litigation costs and attorneys' fees); and (2) that it was Aon's breach of fiduciary duty that necessitated ATCO's bringing this lawsuit. Otherwise stated, ATCO contends that it would not have had to file this lawsuit if Aon had argued on its behalf as, ATCO insists, Aon was legally obliged to do as ATCO's fiduciary representative.

Without belaboring the point, we find both of these contentions incorrect. First, to the extent that it is actually a harm at all, the cost of bringing this lawsuit is simply *part of* the harm resulting from Federal's denial of coverage; it is not a separate or different harm just because ATCO later obtained coverage through its settlement with Federal. If ATCO wanted to recover the costs of

10

bringing this litigation, it needed to pursue this case to judgment or negotiate these costs into the settlement with Federal. Second, ATCO has produced no evidence to support its claim that Aon's breach of duty necessitated this lawsuit. That is, ATCO has offered no evidence whatsoever to show that Aon affected Federal's decision to deny coverage, and Aon has produced substantial evidence that it did not.

In its brief, ATCO repeatedly asserts two premises that have been proven (again and again) to be untrue: (1) that this case arose from Aon's failure to send the Sullivan Letter to Federal, and (2) that the district court held that the claim was not barred by the I v. I Exclusion. In reality, Aon's failure to send the Sullivan Letter has no bearing on this case; this case arose from Federal's assertion that the claim was barred by the I v. I Exclusion. And, the district court did not hold that Federal was incorrect about the I v. I Exclusion; the district court held that there was a genuine question as to whether the I v. I Exclusion was applicable. That is, maybe Federal was right, maybe not — a jury would have to decide. But ATCO settled with Federal, and that ended the matter. ATCO's premises are incorrect, and its claim meritless.

**IV.**

For all of the foregoing reasons, we **AFFIRM** the judgment of the district court.

11