**Elizabeth PECK, by her next friend Mark PECK, Plaintiff–Appellee,**

**v.**

**LANSING SCHOOL DISTRICT, Defendant–Appellant.**

Nos. 96–2193, 97–1231.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1998.

Decided June 29, 1998.

Michael L. Bevins (briefed), Sharon L. La-Pointe (argued and briefed), Beekman & La-Pointe, Okemos, MI, for Defendant–Appellant. Jonathan E. Maire (argued and briefed), Street, Grua, Maire & Young, Lansing, MI, for Plaintiff–Appellee.

Before: JONES, DAUGHTREY, and COLE, Circuit Judges.

COLE, J., delivered the opinion of the court, in which NATHANIEL R. JONES, J., joined. DAUGHTREY, J. (p. 629), delivered a separate concurring opinion.

## OPINION

COLE, Circuit Judge.

In this IDEA action, Defendant–Appellant Lansing (Michigan) School District appeals the district court's grant of summary judgment in favor of Plaintiff–Appellee Elizabeth Peck, in which the district court determined that the Lansing School District could provide physical and occupational therapy to Elizabeth on the premises of the parochial school that she attends, without excessive entanglement of government and religion in violation of the Establishment Clause. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Facts

Elizabeth Peck, twelve years of age, suffers from a rare condition known as osteogenesis imperfecta. Osteogenesis imperfecta, also known as "brittle bone·disease," is genetically transmitted and affects the connective tissues of the body. Osteogenesis imperfecta has its primary effect on a person's bones, causing them to be weak and malformed; affected individuals are generally short in stature with bowed limbs and suffer from frequent fractures. Osteogenesis imperfecta patients are of normal intelligence, and prognosis for a normal life expectancy depends upon the severity of the disease. Elizabeth's form of osteogenesis imperfecta is classified as "Type III," which means that she has severe bone fragility, progressive growth retardation and skeletal deformities. Elizabeth resides with her parents within the Lansing School District, but voluntarily attends Our Savior Lutheran School, a parochial school that is located within the district. Our Savior Lutheran School's stated mission is to provide a Christian atmosphere that permeates the educational program.

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § § 1401 *et seq.*, was enacted to ensure a "free and appropriate public education" (FAPE) to qualified, disabled persons. The IDEA defines FAPE as

"special education and related services" that are provided at public expense and supervision. See 20 U.S.C. § 1401(a)(8).[1] Elizabeth is considered a "child with a disability" for purposes of the IDEA, as well as a "handicapped person" for purposes of the Michigan Mandatory Special Education Act; thus, Elizabeth qualifies for the services provided by these acts.

The Lansing School District began providing services to Elizabeth pursuant to the IDEA in 1987. In 1992, when Elizabeth began attending Our Savior Lutheran School, the Lansing School District provided a health care aide to Elizabeth on the premises of Our Savior Lutheran School each school day from 1:30 to 2:00 p.m. to assist Elizabeth in afternoon toileting. Additionally, the Lansing School District provided a teacher consultant to visit Our Savior Lutheran School once monthly to discuss Elizabeth's progress and school adjustment skills with her teachers. The Lansing School District further provided physical therapy (PT) and occupational therapy (OT) to Elizabeth at her home twice weekly.

In June 1994, the Pecks met with the Lansing School District to develop an Individualized Educational Plan (IEP), a plan for Elizabeth for the 1994–95 school year as required by the IDEA. The Pecks and the Lansing School District agreed on the type and the amount of services, as well as the goals and objectives set out in the IEP. The Pecks requested that the Lansing School District provide Elizabeth's PT and OT at Our Savior Lutheran School rather than their home, preferably during her scheduled physical education period. The Pecks' request was based on their assertion that the provision of PT and OT to Elizabeth at their home disrupted Elizabeth's daily schedule.

When the therapy was provided in the afternoon, Elizabeth was forced to either leave school early or forego doing her homework or engage in other after-school activities; when the therapy was provided in the morning before school, Elizabeth's sleep patterns were disrupted. The Pecks therefore contended that the Lansing School District must provide Elizabeth's PT and OT at Our Savior Lutheran School, because at that time, the IDEA required a school district to provide benefits to private school students with disabilities which are comparable to the benefits provided for students enrolled in public schools.[2] Thus, because students in public schools could receive PT and OT at their schools, Elizabeth also should be able to receive those services at her school. The Lansing School District refused the Pecks' request, stating that the Establishment Clause of the First Amendment to the United States Constitution precluded its provision of those services at Our Savior Lutheran School, because provision of these services at a parochial school would constitute excessive entanglement of government and religion.

## B. Procedural History

The Pecks then requested a hearing, as provided by the IDEA, see 20 U.S.C. § 1415(f), regarding whether the Establishment Clause precluded the Lansing School District from providing PT and OT to Elizabeth at Our Savior Lutheran School. Following the hearing, the local hearing officer, Vicki Wozniak, issued a decision on April 29, 1995, determining that:

1. Our Savior Lutheran School would benefit by having OT and PT services provided on-site.

2. OT and PT services contain an "instructional component." [3]

---

1. Prior to the 1997 amendments to the IDEA, FAPE was defined at 20 U.S.C. § 1401(a)(18).

2. As will be discussed later, the IDEA was amended in 1997. The current statute does not require a local education agency to pay for services at a private school, if the agency made a FAPE available to the child and the parents elected to place the child in a private school. See 20 U.S.C. § 1412(a)(10)(C)(i) (1997).

3. The issue of whether a service is "instructional" or not is relevant to the Pecks' contention

that the United States Supreme Court's decision in Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), distinguished the provision of "auxiliary or related services" from the provision of "instructional services" for purposes of Establishment Clause analysis. The Pecks argue that because PT and OT were auxiliary services, Zobrest—in which the Court allowed the provision of auxiliary services at a parochial school—controlled the present case, rather than Aguilar v. Felton, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985) or School

3. Entanglement between government and religion would be excessive.

4. Elizabeth would receive the benefit of the service if the Lansing School District provided it off-site. She has benefitted from the service provided to her at home.

5. "The issue of entitlement will not be used to decide this case."

6. Elizabeth would receive a FAPE if the Lansing School District provided the services off-site.

7. The services should "on a legal basis" be provided off-site since they have an instructional component. The Lansing School District can provide the services off-site so that a FAPE is provided.

8. Districts should decide, on a case by case basis, which services they can provide off-site, to avoid unnecessary, and thus excessive, government entanglement with religion.

Based on these conclusions, Wozniak determined that the Lansing School District could not provide PT and OT services at a parochial school such as Our Savior Lutheran School, because doing so would violate the Establishment Clause. Accordingly, Wozniak concluded that the Lansing School District must provide Elizabeth's PT and OT at a religiously-neutral site.

The Pecks appealed Wozniak's decision to the Michigan Department of Education. State Hearing Officer William P. Sosnowsky affirmed Wozniak's decision; however, Sosnowsky overruled Wozniak's conclusion that PT and OT were instructional services, instead finding that PT and OT were auxiliary services. Sosnowsky nonetheless upheld Wozniak's determination, finding that neither instructional nor auxiliary services could be provided at a parochial school without violating the Establishment Clause.

Thereafter, the Pecks filed suit in the United States District Court for the Western District of Michigan, asserting violations of the IDEA, the Michigan Mandatory Special Education Act, 42 U.S.C. § 1983, the Reli-

gious Freedom Restoration Act, the Michigan Civil Rights Act, and the Michigan School Code. With respect to their IDEA claim, the Pecks contended that the Lansing School District's refusal to provide PT and OT to Elizabeth at Our Savior Lutheran School violated the IDEA. The Lansing School District filed a counterclaim, alleging that Sosnowsky erred in overruling Wozniak's findings that PT and OT were instructional services. Both parties thereafter sought summary judgment.

Upon review of the motions, the district court determined that summary judgment could not be granted to either party because the record was not sufficiently developed to determine the following issues: how and under what circumstances could the services be provided at Our Savior Lutheran School; what possible issues of entanglement would arise from the provision of the services at the school; where, when and how the services could be provided off-site; and the potential impact upon Elizabeth in providing the services off-site. The parties agreed that the case should be remanded to Wozniak for additional factfinding.

Wozniak held hearings on July 19, July 24, and August 1, 1996, and filed supplemental findings of fact on August 4, 1996. Among other findings, Wozniak concluded that there were four possible issues of entanglement between government and religion arising from the Lansing School District's provision of PT and OT services at Our Savior Lutheran School: (1) the increased time necessary for Lansing School District's supervision of staff; (2) the need for additional contact between the Lansing School District and Our Savior Lutheran School; (3) the possibility of Lansing School District staff being uncomfortable during religious activities and unconsciously modeling the observed religious behavior; and (4) the possibility of PT and OT staff being seen as employees of Our Savior Lutheran School.

After consideration of the additional findings of fact, the district court heard the

_Dist. v. Ball,_ 473 U.S. 373, 105 S.Ct. 3248, 87 L.Ed.2d 267 (1985), in which the Court found that the Establishment Clause precluded the provision of instructional services at religious schools. As will be discussed later, _Aguilar_ and _Ball_ have since been overruled. _See Agostini v. Felton,_ 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

arguments of the parties on their motions for summary judgment on August 12, 1996. Following the arguments, the district court orally granted the Pecks' motion for summary judgment on their IDEA claim and granted the Lansing School District's motion for summary judgment on the Pecks' claims under the Religious Freedom Restoration Act and 42 U.S.C. § 1983. Finally, the district court dismissed the Pecks' state law claims without prejudice, finding the claims to be moot.[4]

In its ruling, the district court expressly determined that it did not consider the issue of Elizabeth's entitlement to services, stating that "the sole issue before the hearing officer [Wozniak] relating to the Individualized Education Plan was where those services could legally be performed.... Accordingly, the issue before the court ... is limited to the location of these services under the IDEA."

The district court determined that the provision of PT and OT at Our Savior Lutheran School would not constitute excessive entanglement between government and religion. After considering the four possible types of entanglement identified by Wozniak, the district court concluded that "any minimal entanglement that might exist in this case is not unnecessary and thus not excessive under the establishment clause under the facts of this case." The district court's order provided that Our Savior Lutheran School would be responsible to transport Elizabeth to its school library for PT and OT services, so that Lansing School District employees would not have to enter the classrooms at the parochial school.

The district court followed with a written order setting forth its conclusions, stating that "the Defendant Lansing School District shall provide on a regular basis the physical therapy and occupational therapy services called for in the Individualized Educational Program (IEP) developed for plaintiff in June 1996[5] ... [and] shall provide said services in the library of Our Savior Lutheran

School...." The Lansing School District then filed a timely notice of appeal of the district court's order, docketed as No. 96–2193.

### C. Additional Procedural History

After the Lansing School District filed its notice of appeal, a procedural difficulty arose. During the preparation of the joint appendix for the appeal, the Lansing School District became aware that the entire administrative record had never been properly filed with the district court. The Lansing School District contacted the Pecks, and then filed a motion for relief from judgment—in which the Pecks joined—based upon the fact that the district court did not consider the entire administrative record. At the same time, the Lansing School District filed a motion for remand with this court, pursuant to the procedures set forth in *First Nat'l Bank v. Hirsch*, 535 F.2d 343 (6th Cir.1976). The district court issued an order certifying that it was not inclined to grant the motion for relief from judgment. Thereafter, Lansing School District filed a motion for rehearing with respect to that order and, in addition, filed the remainder of the administrative record that it had highlighted to indicate the portions that it believed to be "material." The district court issued an order on January 31, 1997, denying the motion for rehearing, and stating that it considered the administrative record that had been filed and found nothing to indicate that the district court should alter or amend its judgment. The Lansing School District then filed a timely notice of appeal of the district court's order denying its motion for rehearing, docketed as No. 97–1231. The appeals were consolidated for purposes of briefing and submission and are now ripe for consideration.

### II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, using the same standards

---

4. The district court never expressly ruled on the Lansing School District's counterclaim. However, in its ruling, the district court stated that PT and OT services did not have an instructional component and were therefore auxiliary services.

5. The parties acknowledge that the IEP from which this action arose was prepared on June 8, 1994. Pursuant to the IDEA and its regulations[,] subsequent IEPs have been prepared annually pursuant to 34 C.F.R. § 300.343(d). This order incorporates Elizabeth Peck's most recent IEP.

as those employed by the district court. *See Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 633 (6th Cir.1997). Under the IDEA, a district court uses a "modified de novo" standard for reviewing state administrative determinations. *Doe v. Metropolitan Nashville Public Schools*, 133 F.3d 384, 386 (6th Cir.1998) (citing *Doe v. Board of Educ.*, 9 F.3d 455, 458 (6th Cir. 1993) and applying *Board of Educ. v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)), *petition for cert. filed*, 66 USLW 3750 (May 13, 1998). This standard involves a de novo review, but requires that the district courts " 'give due weight to the state administrative proceedings in reaching its decision.' " *Id.* (quoting *Doe*, 9 F.3d at 458). Therefore, a reviewing court must give a hearing officer's decision proper consideration and cannot substitute its own notions of "sound educational policy" for those of the school authorities. *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. "Due weight" has never been definitively defined in this circuit, but we have recently stated what due weight does **not** mean. Due weight does not mean "that the district court can simply adopt the state administrative findings without an independent re-examination of the evidence." *Metropolitan Nashville Public Schools*, 133 F.3d at 387.

## III. ANALYSIS

The Lansing School District has filed two notices of appeal in this case, an appeal of the district court's grant of summary judgment to the Pecks on their IDEA claim (No. 96–2193) and an appeal of the district court's order that denied rehearing of the district court's order certifying that it was not inclined to grant the Lansing School District's motion for relief from judgment (No. 97–1231). We begin with the latter appeal.

## A. Failure to Consider the Entire Administrative Record

In the context of appeal No. 97–1231—the Lansing School District's appeal of the district court's order that denied rehearing of its order certifying that it was not inclined to grant the Lansing School District's motion for relief from judgment—the Lansing School District argues that the district court's failure to consider the entire administrative record constitutes reversible error.[6]

▮ At the time the district court entered the order, jurisdiction of the case was vested in this court. It is well settled that the filing of a notice of appeal operates to transfer jurisdiction of a case to the court of appeals; the district court is thereafter without jurisdiction. *See, e.g., Hogg v. United States*, 411 F.2d 578 (6th Cir.1969). In the present case, the Lansing School District correctly filed its motion for relief from judgment in the district court and a motion for remand in this court, pursuant to the procedures set out in *First Nat'l Bank v. Hirsch*, 535 F.2d 343 (6th Cir.1976). However, the district court certified that it was not inclined to grant the motion, so this court never remanded the case to the district court. Thereafter, the Lansing School District filed a motion for rehearing of the district court's certification in the district court. In response, the district court issued a written decision, denying the motion for rehearing. However, jurisdiction rested solely with this court at the time that the district court attempted to rule on the motion for rehearing.

---

6. The relief that the Lansing School District is requesting in No. 97–1231 is not quite clear. The Lansing School District has not asked this court to remand the case to the district court for a review of the entire administrative record, an obvious remedy for its allegation that the district court failed to consider the entire record. Rather, the Lansing School District states that

[a]lthough the failure to receive and consider the administrative record constitutes reversible error, Appellant requests that this Court consider and rule upon the substantive issues on appeal. A remand to the lower court for receipt and review of the entire administrative record would only delay the need for this Court to ultimately decide these issues. The lower court believes it had sufficient information to rule on these substantive issues. The court ultimately received the record after the filing of the parties' motions for relief from judgment and/or for rehearing/new trial. Following the court's cursory review, the judge noted that nothing in the record would change the court's ultimate decision.... A remand would be futile and ultimately delay resolution of these important issues affecting the education of students with handicaps.

*Appellant's Brief at 19.*

Because the district court was without jurisdiction to enter the order, the district court's order was without effect and cannot serve as the basis of an appeal. Accordingly, we dismiss that appeal and the issue raised therein.

## B. District Court's Grant of Summary Judgment

The Lansing School District contests the district court's grant of summary judgment in favor of the Pecks on their IDEA claim, in which the district court determined that the Lansing School District's provision of PT and OT to Elizabeth at Our Savior Lutheran School would not violate the Establishment Clause. On appeal, the Lansing School District advances three arguments: (1) that Elizabeth is not entitled to PT and OT services under the 1997 amendments to the IDEA; (2) that the district court erred by failing to give appropriate weight to the findings of the hearing officer; and (3) that the district court erred in applying the relevant law. We now consider each argument in turn.

### 1. Entitlement to Services

■ The Lansing School District argues that Elizabeth's continued entitlement to services is at issue in this case, contending that the issue was raised at the administrative level and that the Pecks raised the issue in their complaint to the district court. We find that the Lansing School District's arguments are unavailing. The hearing officer and the district court expressly stated that the sole issue considered in this case was the proper location of Elizabeth's PT and OT services; her entitlement to services was not at issue in this case.

■ Further, we find no merit to Lansing School District's argument that the Pecks raised the issue in their complaint to the district court. In their complaint, the Pecks merely cited to the provisions of the IDEA that related to their claim regarding the furnishing of services at Our Savior Lutheran School; a citation to the IDEA in this fashion is not equivalent to raising the issue of entitlement. Accordingly, it would not be appropriate for this court to consider the issue of entitlement, as it was not considered by the district court nor by the hearing officer at the administrative level, and the record is not adequate to address that issue.

We note, however, that the IDEA was amended in 1997, after the time that the parties filed briefs in this case.[7] We express no opinion regarding Elizabeth's present entitlement to PT and OT services under the 1997 amendments to the IDEA.[8]

### 2. Findings of the Hearing Officer

The Lansing School District argues that the district court failed to give due weight to the following findings made by Wozniak, the local hearing officer: (1) that the Establishment Clause prohibited the Lansing School District from providing services to Elizabeth at her parochial school because doing so would (A) advance religion by (i) benefitting Our Savior Lutheran, (ii) causing a religious effect on the Lansing School District staff and (iii) creating a perceived symbolic union between the two schools, and (B) result in excessive entanglement by increased contact and supervision; and (2) that OT and PT are instructional services.

■ As previously stated, a district court is required to give "due weight" to the findings of a hearing officer. *See Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. Although due weight has not been precisely defined, that term does not mean that the district court

---

7. The relevant amended portion of the statute states:

[T]his subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C. § 1412(a)(10)(C)(i).

8. In addition, we note that we do not construe the district court's order which stated that "the Defendant Lansing School District shall provide on a regular basis the physical therapy and occupational therapy services ...." as an order that **entitles** Elizabeth to PT and OT services. The sole issue before the district court was whether those services could be provided at Our Savior Lutheran School.

must agree with the hearing officer's findings, which is the argument that the Lansing School District advances. Moreover, the Lansing School District does not argue that the district court disregarded the findings of the hearing officer but, rather, that the district court did not accord due weight to the hearing officer's findings that particular facts resulted in a violation of the Establishment Clause. Although the district court was bound to give weight to all the findings of the hearing officer, the district court was certainly free to disagree with that officer as to the interpretation of the Establishment Clause. *See Metropolitan Nashville Public Schools,* 133 F.3d at 387.

We conclude that the district court gave appropriate weight to Wozniak's findings. The district court was concerned mainly with the issue of entanglement and therefore requested that Wozniak identify possible issues of entanglement. After Wozniak did so, the district court carefully considered those issues, but concluded that there was no genuine issue of material fact that any minimal entanglement possible in this case rose to the level of an Establishment Clause violation.

■ The Lansing School District also contests the district court's finding that OT and PT were not instructional services. Although Wozniak concluded otherwise, that conclusion was overruled by Sosnowsky at the next level of administrative review. In addition, the district court noted that Wozniak did not base her conclusion in this regard on any specific facts. Accordingly, we find no merit to the Lansing School District's argument that the district court did not give appropriate weight to Wozniak's findings that PT and OT were instructional services.

### 3. Applicable Law

The Lansing School District argues that the district court misapplied the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2125, 29 L.Ed.2d 745 (1971), in determining whether the provision of PT and OT at Our Savior Lutheran violated the Establishment Clause. Before addressing the merits of this argument, we begin with a brief discussion of Establishment Clause case law.

■ At the core of the Establishment Clause is the idea that government cannot "favor religion over nonreligion, nor sponsor a particular sect, nor try to encourage participation or abnegation of religion." *Walz v. Tax Comm'n,* 397 U.S. 664, 694, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring). In 1971, the Supreme Court set out the often-cited test to determine whether a statute or the application of a statute violates the Establishment Clause:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.

*Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2125 (1971).

Thereafter, the Court applied the *Lemon* test in Establishment Clause cases, such as *Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), *overruled by Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) and its companion case, *School Dist. v. Ball,* 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985), *overruled by Agostini,* 521 U.S. 203, 117 S.Ct. 1997. In *Aguilar,* the Court had barred the New York City Board of Education from sending public school teachers into sectarian private schools to teach remedial classes, and in *Ball,* the Court had found that Grand Rapids' Shared Time program which provided remedial services to students in nonpublic schools violated the Establishment Clause. To summarize these two cases:

> Distilled to essentials, the Court's conclusion that the Shared Time program in Ball had the impermissible effect of advancing religion rested on three assumptions: (i) any public employee who works on the premises of a religious school is presumed to inculcate religion in her work; (ii) the presence of public employees on private school premises creates a symbolic union between church and state; and (iii) any and all public aid that directly aids the educational function of religious schools impermissibly finances religious indoctrination, even if the aid reaches such schools

as a consequence of private decisionmaking. Additionally, in *Aguilar*, there was a fourth assumption: that New York City's Title I program necessitated an excessive government entanglement with religion because public employees who teach on the premises of religious schools must be closely monitored to ensure that they do not inculcate religion.

*Agostini*, 521 U.S. at ——, 117 S.Ct. at 2010.

After *Aguilar* and *Ball*, the Supreme Court decided *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), without relying upon nor overruling the *Lemon* test. In *Zobrest*, the Court addressed whether it was permissible for a deaf high school student to bring his state-employed sign-language interpreter, provided under the IDEA, with him to his Catholic high school. The Court held that it was permissible, expressly disavowing the notion that "the Establishment Clause [laid] down [an] absolute bar to the placing of a public employee in a sectarian school." *Id.* at 13, 113 S.Ct. 2462. Thus, in *Zobrest*, the Court began to repudiate the assumptions regarding inculcation and the symbolic link between the government and religion that had been set forth in *Aguilar* and *Ball*.

▆ The state of the law completely changed, however, with the Supreme Court's 5–4 decision in *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). In *Agostini*, the Court expressly overruled *Aguilar* and *Ball*, invalidating the assumptions made in those cases that led to the conclusion that the provision of services at a parochial school impermissibly advances religion. *Id.* at 2016. In addition, the Court confirmed that despite criticism,[9] the *Lemon* criteria remain viable considerations. *Id.* at 2010, 2015. The Court reaffirmed the need to ascertain whether laws have a secular purpose and a primary effect other than advancing religion, and incorporated the third prong of the *Lemon* test, the entanglement prong, into the second prong of the

*Lemon* test, the effects calculus. *Id.* at 2010, 2016. According to the *Agostini* Court, a federally funded program providing services on parochial school campuses does not run afoul of the Establishment Clause as long as the instruction is supplemental to regularly provided services, the award of funding is based on neutral criteria, and the program imposes adequate safeguards to ensure that the instruction is secular. *See id.* at 2016.

In the present case, the district court analyzed the Establishment Clause under both *Zobrest* and *Lemon* and found that no constitutional violation occurred under either standard. The district court determined that the first two prongs of the *Lemon* test were not applicable to the present case, and as to the third prong—entanglement—any minimal entanglement was necessary and, therefore, was not excessive. The Lansing School District disputes the district court's finding regarding the second prong of the *Lemon* test: whether the primary effect is one that neither advances nor inhibits religion. The Lansing School District argues that the primary effect of the provision of services to Elizabeth at Our Savior Lutheran School is one that advances religion because the services impermissibly supplant Our Savior Lutheran School's special education services, rather than supplement Our Savior Lutheran School's services, which is permissible.

▆ The Lansing School District's argument was specifically rejected by the Supreme Court in *Agostini*. *See id.* at 2013–14. The *Agostini* Court found that there was no evidence that all sectarian schools provide remedial instruction, such that the provision of remedial services supplanted services rather than supplemented services. The Court further noted that there was no logical basis to conclude, as the school district argued, that the provision of remedial services at a parochial school was an impermissible supplanting of services when performed onsite at the parochial school, but was not an

9. *See, e.g.,* Kent Greenawalt, *Quo Vadis: The Status and Prospects of "Tests" Under the Religion Clauses*, 1995 Sup.Ct. Rev. 323, 359–60 (noting the current Justices' dissatisfaction with the *Lemon* test on the ground that it provides for either too much or too little separation of govern-

ment and religion in particular cases); *Public Funding of Special Education in Parochial Schools*, 111 Harv. L.Rev. 279, 285 (1997) (stating, with respect to the *Lemon* test, that "although the Court has not explicitly renounced it, this standard has fallen into disrepute").

impermissible supplanting of services when performed at a neutral site. *See id.* Likewise, in the present case, there is no evidence that Our Savior Lutheran School provided PT and OT services, such that the provision of those services by the Lansing School District would be an impermissible supplanting of services. In addition, as in *Agostini,* Lansing School District's position that the provision of services at a neutral site is acceptable runs afoul of its argument that it is the provision of PT and OT services that constitutes an impermissible supplanting of services.

■ Under the *Agostini* analysis, the Lansing School District has no valid argument that the Establishment Clause is violated by its provision of PT and OT services at Our Savior Lutheran School. All the arguments advanced by the Lansing School District are based on the assumptions set forth in *Aguilar* and *Ball* that were expressly overruled by the Court in *Agostini.* The IDEA certainly has a secular purpose and its primary effect is one that does not advance religion. *See School Comm. v. Department of Educ.,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (stating that the purpose of the IDEA "is principally to provide handicapped children with a free appropriate public education which emphasizes special education and related services designed to meet their unique needs"). Accordingly, we affirm the district court's grant of summary judgment in favor of the Pecks on their IDEA claim.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

DAUGHTREY, Circuit Judge, concurring.

I concur in the conclusion that *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), now controls our analysis of the First Amendment implications of the Individualized Educational Programs developed for Elizabeth Peck prior to the 1997–1998 school year. I write separately, however, to emphasize that this case does *not* present us with a question of the propriety of future state-funded services at Our Savior

Lutheran School under the Individuals with Disabilities Education Act (IDEA). As noted by Judge Cole, the IDEA was amended, effective June 4, 1997, to provide that the Act no longer requires a local educational agency to pay for educational services for a disabled child at a private school "if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. § 1412(a)(10)(C)(i).