RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ROBERT GREER, JEFFREY RIEMER, JANE BARKER, TUCKER GOODMAN, DOLORES BOWERS, and AMBER TURNER, individually and on behalf of themselves and all others similarly situated,

                              *Plaintiffs-Appellants*,

     *v.*

STRANGE HONEY FARM, LLC; GARY STRANGE and FONDA STRANGE, owners and members; INGLES MARKETS, INC.; K-VA-T FOOD STORES, INC.,

                              *Defendants-Appellees*.

> No. 23-5589

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:20-cv-00262—Katherine A. Crytzer, District Judge.

Argued:  June 13, 2024

Decided and Filed:  September 6, 2024

Before:  COLE, GRIFFIN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Matthew G. Norgard, KRISLOV & ASSOCIATES, LTD., Chicago, Illinois, for Appellants.  Gordon Ball, GORDON BALL, LLC, Nashville, Tennessee, for the Strange Appellees.  Mary C. Moffatt, WIMBERLY, LAWSON, WRIGHT, DAVES & JONES, PLLC, Knoxville, Tennessee, for the Retail Appellees.  **ON BRIEF:**  Matthew G. Norgard, Clinton A. Krislov, KRISLOV & ASSOCIATES, LTD., Chicago, Illinois, Kent A. Heitzinger, KENT HEITZINGER & ASSOCIATES, Winnetka, Illinois, Al Holifield, HOLIFIELD & JANICH, PLLC, Knoxville, Tennessee, for Appellants.  Gordon Ball, GORDON BALL, LLC, Nashville, Tennessee, for the Strange Appellees.  Mary C. Moffatt, WIMBERLY, LAWSON, WRIGHT, DAVES & JONES, PLLC, Knoxville, Tennessee, for the Retail Appellees.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

Plaintiffs are consumers who allege Strange Honey made fraudulent claims about its products. The district court dismissed plaintiffs' claims against all but one defendant for pleading fraud-based claims without the specificity required by Federal Rule of Civil Procedure 9(b), and it then denied plaintiffs' motion for leave to amend. After plaintiffs appealed, the district court formally dismissed the remaining defendant and entered final judgment. At issue is whether we possess jurisdiction to consider plaintiffs' appeal, and, if so, whether the district court correctly granted the motions to dismiss and denied the motion for leave to amend. Because we answer both questions in the affirmative, we affirm the district court's judgment.

I.

Located in eastern Tennessee, defendant Strange Honey Farm, LLC, produces and distributes honey products. Plaintiffs are members of a putative class of consumers who purchased honey from Strange Honey in Tennessee, Illinois, North Carolina, Florida, Virginia, and Kentucky through certain grocery stores or websites. They allege that Strange Honey fraudulently markets its honey. According to plaintiffs' conclusory complaint, although the labels on Strange Honey jars describe the honey "as 100% raw Tennessee honey," it is not raw (because it is cooked when it is processed), it is not 100% honey (because it is diluted with corn syrup), and it is not from Tennessee (because it is sourced from Vietnam).

Plaintiffs filed their complaint against three groups of defendants: (1) Strange Honey and its owners, Gary Strange and Fonda Strange (collectively, "Strange Honey"); (2) Ingles Markets, Inc., and K-VA-T Food Stores, Inc., d/b/a Food City (collectively, "the supermarkets"); and (3) Carol Hagen d/b/a Tennessee Artisan Honey ("Hagen"). The complaint asserted a single claim of fraudulent misrepresentation (Count One) against all defendants. It also raised an additional four claims against Strange Honey: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count Two), violation of the North Carolina Unfair and

Deceptive Trade Practices Act (Count Three), violation of the Florida Uniform Deceptive and Unfair Trade Practices Act (Count Four), and violation of the Virginia Consumer Protection Act (Count Five).

Strange Honey and the supermarkets both moved to dismiss for failure to state a claim. The other defendant, Hagen, did not move to dismiss and instead answered the complaint. The district court then granted both motions, dismissing all claims against the supermarkets and Strange Honey.

Plaintiffs then moved for leave to amend their complaint and submitted a proposed amended complaint. The district court denied that motion. A month and a half later, plaintiffs entered a stipulation, signed by only plaintiffs' counsel and Hagen's counsel, voluntarily dismissing Hagen from the case. Within 30 days of entering that stipulated dismissal, plaintiffs filed a notice of appeal, purporting to appeal from the district court's earlier grants of the motions to dismiss and denial of the motion for leave to amend. As a result of that notice, this appeal was docketed.

In their appellate briefs, both Strange Honey and the supermarkets challenged our appellate jurisdiction because of plaintiffs' noncompliance with Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and thus the lack of a "final decision[]" from the district court under 28 U.S.C. § 1291. Instead of defending their earlier statement that we had jurisdiction over this appeal, plaintiffs moved to hold the appeal in abeyance "pending issuance of [an] order of dismissal by the district court." We granted that motion. The district court then entered an order dismissing Hagen with prejudice and entered final judgment against plaintiffs. We then returned this appeal to active status and heard oral argument.

II.

A.

Several jurisdictional questions arise from this case's unusual procedural history. And because "we have an independent obligation to assure ourselves of our own jurisdiction," we must address them. *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 759 (6th Cir. 2024).

Our appellate jurisdiction is limited to district courts' "final decisions." 28 U.S.C. § 1291. "[F]or the most part, a district court's decision counts as 'final' only if it takes care of all claims and all parties in the case." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019) (citation omitted). So when there are several defendants and the district court at first dismisses fewer than all of them, those initial dismissals—and other interlocutory decisions—are generally not immediately appealable. *See* 16A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3950.5 & n.31 (5th ed. 2023).

Plaintiffs seemingly recognized this finality problem and implemented what turned out to be an imperfect solution (or at least one they did not later try to defend). After the district court dismissed Strange Honey and the supermarkets and then denied the motion for leave to amend, plaintiffs stipulated to voluntarily dismiss Hagen, the last remaining defendant, under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). But only plaintiffs' counsel and Hagen's counsel signed that stipulation. Rule 41 provides that a plaintiff "may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by *all parties who have appeared*." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). And we have interpreted that rule, albeit in an unpublished opinion, to mean that a plaintiff seeking to voluntarily dismiss a case must obtain the signatures of *all* parties—even those previously dismissed. *Anderson-Tully Co. v. Fed. Ins.*, 347 F. App'x 171, 176 (6th Cir. 2009).

We need not decide whether *Anderson-Tully* correctly interpreted Rule 41 (and note that plaintiffs make no argument against it). Rather, we assume that plaintiffs' stipulated dismissal of Hagen did not make this case appealable under *Anderson-Tully* and thus consider whether the district court's eventual entry of final judgment ripened our appellate jurisdiction. That question involves two issues: (1) whether the premature notice of appeal relates forward to the date of

eventual entry of judgment such that it was timely filed; and (2) whether the district court retained jurisdiction after the notice of appeal was filed to enter that eventual judgment.

B.

We begin with whether plaintiffs' premature notice of appeal was timely filed. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Typically, a notice of appeal must be filed "within 30 days *after*" the district court's final decision is entered. Fed. R. App. P. 4(a)(1)(A) (emphasis added); *see also* 28 U.S.C. § 1291; *Fifth Third*, 925 F.3d at 273. So at issue here is whether the premature notice of appeal (filed June 16, 2023) relates forward to when the district court entered final judgment (January 8, 2024).

*Bonner v. Perry* is on point and instructive. 564 F.3d 424 (6th Cir. 2009). There, as here, the plaintiff prematurely filed her notice of appeal after the grant of partial summary judgment to fewer than all defendants. At that time, the case was not immediately appealable because another defendant remained in the case and the district court had not certified its decision for immediate appeal. *Id.* at 427–28. After she filed the premature notice, however, the district court dismissed the remaining defendant. Under those circumstances, we held that the plaintiff's premature notice was "sufficient to vest us with jurisdiction" to decide the appeal of the earlier grant of partial summary judgment. *Id.* at 429. We reasoned that when the district court "announces the disposition of fewer than all claims and a notice of appeal is filed referencing that disposition, the notice can relate forward to effect an appeal from that disposition as encompassed in a subsequent final judgment disposing of all claims against all parties." *Id.* (citation omitted).

We have routinely recognized that, in similar "circumstances," "premature notices of appeal vest this court with jurisdiction when the judgment becomes final prior to disposition of the appeal." *Allen v. NCL Am. LLC*, 741 F. App'x 292, 295 (6th Cir. 2018); *see also, e.g.*, *United States v. $525,695.24, Seized From JPMorgan Chase Bank Inv. Acct. #xxxxxxxx*, 869 F.3d 429, 435–36 (6th Cir. 2017); *Lane v. Wexford Health Sources (Contreator)*, 510 F. App'x 385, 387 (6th Cir. 2013). And in so holding, we are in good company: "Authority from

multiple circuits supports the view that, in these circumstances, the premature notice relates forward to the date of entry of the final judgment." 16A Wright & Miller § 3950.5 & n.31 (collecting cases from the First, Second, Fourth, Fifth, Seventh, Ninth, Tenth, D.C., and Federal Circuits).

Thus, applying *Bonner*, we hold that plaintiffs' premature notice of appeal relates forward to the date the district court entered final judgment. It thus "is sufficient to vest us with jurisdiction to hear this appeal." *Bonner*, 564 F.3d at 429.

## C.

We next turn to a question that *Bonner* did not explicitly address: whether the district court had jurisdiction to dismiss the remaining defendant after the notice of appeal was filed. If the district court lacked jurisdiction to dismiss Hagen, then that order is "without effect and cannot serve as the basis of an appeal." *Peck by Peck v. Lansing Sch. Dist.*, 148 F.3d 619, 626 (6th Cir. 1998).

Here, when the district court dismissed Hagen after the notice of appeal was filed, it determined that it had jurisdiction to do so. We review that jurisdictional determination de novo and may affirm for any reason supported by the record. *See S. Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 28 F.4th 684, 693 (6th Cir. 2022); *Sagan v. United States*, 342 F.3d 493, 500 (6th Cir. 2003).

Our concern about the district court's jurisdiction arises from the general rule in *Griggs v. Provident Consumer Discount Co.*, that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." 459 U.S. 56, 58 (1982) (per curiam). But like many general rules, *Griggs*'s jurisdiction-divestiture rule has exceptions.

For instance, the district court relied on an exception for a notice of appeal filed from a "clearly nonappealable order." *See Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981). Under that exception, a district court retains jurisdiction if a notice of appeal is filed from an order for which "there is no serious dispute" as to its interlocutory nature. *Id.* Examples of such

orders include a discovery ruling, a denial of a jury demand, and an order for sanctions under Rule 11. *See id.*; *see also FirsTier Mortg. Co. v. Invs. Mortg. Ins.*, 498 U.S. 269, 276 (1991).

This case, however, is a poor fit for the "clearly nonappealable order" exception. The "order" appealed from was the stipulated dismissal signed by all then-remaining parties in the case and our only on-point (unpublished) case suggests there could be serious dispute about the question. *See Anderson-Tully*, 347 F. App'x at 175–76. Indeed, our sister circuits are split on whether signatures from previously dismissed parties are necessary to effect a dismissal. *Compare City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1038 (11th Cir. 2023) ("We agree with the Sixth Circuit's holding in *Anderson-Tully* that a Rule 41(a)(1)(A)(ii) stipulation also requires the signature of a party that appeared but has already been removed from an action."), *with Nat'l City Golf Fin., a Div. of Nat'l City Com. Cap. Co. v. Scott*, 899 F.3d 412, 415 n.3 (5th Cir. 2018) ("In a multi-defendant suit, the plaintiff may single out a party for dismissal; in those cases only the dismissed defendant need sign the stipulation."). Because there could be a reasonable dispute about whether the stipulated dismissal was an appealable final order, the "clearly nonappealable" exception does not apply here.

But *Griggs*'s jurisdiction-divestiture rule has other exceptions. Even after a notice of appeal has been filed, the district court "retains jurisdiction" to take several types of actions, including "to proceed with matters that will aid the appellate process." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013) (citations omitted).

The district court's dismissal of Hagen aided the appellate process. To see why, imagine if the district court had not dismissed Hagen while this appeal was pending. Given *Anderson-Tully*'s interpretation of Rule 41 and plaintiffs' effective concession that they did not appeal from a final order, we presumably would have had little choice but to dismiss the appeal and remand to the district court for lack of appellate jurisdiction. *See, e.g.*, *Richard v. Winn*, 2022 WL 19520017, at *1 (6th Cir. Nov. 18, 2022) (order) (dismissing appeal for lack of appellate jurisdiction where the order appealed from "disposed of fewer than all of the claims or parties" and the district court did not enter a "final decision during the pendency of th[e] appeal"). As explained above, the district court's eventual dismissal ripened our appellate jurisdiction and thus aided the appellate process. In this vein, the district court acted within its jurisdiction by

taking the narrow step of "patching up the judgment to allow appellate review" by fixing a modest error with the initial stipulation of dismissal. *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006).

To be sure, the category of actions a district court can take in aid of the appellate process is "narrowly defined." *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013). It does not include "actions that *alter* the case on appeal." *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019) (quoting *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003)). But here, the district court did not alter the case on appeal. It merely disposed of a remaining party resolving an earlier errant filing so that the appealed case could proceed.

Holding that the district court retained jurisdiction to take this action aligns with the overall purpose of *Griggs*'s jurisdiction-divestiture rule. As Judge Easterbrook aptly explained:

> The rule summarized in *Griggs* is designed to prevent conflict among tribunals, as well as to prevent the waste of time and money that occurs if the district court changes a judgment after an appeal has been briefed. These interests are not implicated by allowing the district court to enter a proper final decision and thus permit a pending appeal to go forward.

*Wis. Mut. Ins.*, 441 F.3d at 504–05. "It would be anomalous, moreover, to adopt a rule that forecloses such district-court action—the seeming result would be that neither the court of appeals nor the district court has power to act on the order appealed from." 16A Wright & Miller § 3949.1 n.47.

Thus, after plaintiffs filed their premature notice of appeal, the district court retained jurisdiction to dismiss the remaining defendant (Hagen) so that the appeal against the previously dismissed defendants (Strange Honey and the supermarkets) could proceed. Once that final order was entered, the notice of appeal then related forward to the judgment date such that it was timely filed. Accordingly, the district court's dismissal of the remaining defendant ripened our appellate jurisdiction. With these jurisdictional issues resolved, we turn to the merits.

### III.

In a diversity case like this one, state law governs substantive issues and federal law governs procedural issues. *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2022) (citing *Erie R.R.*

*Co. v. Tompkins*, 304 U.S. 64 (1938)).  So while state law governs the burden of proving fraud, Federal Rule of Civil Procedure 9(b) governs the standard for pleading it.  *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 n.10 (6th Cir. 2022).  Because plaintiffs' substantive state-law claims are grounded in fraud, Rule 9(b)'s pleading standard applies to all of them.[1]

## A.

The main substantive issue on appeal is whether the district court properly granted Strange Honey's and the supermarkets' motions to dismiss, or, put differently, whether the original complaint stated a claim upon which relief could be granted against those defendants. We review the district court's Rule 9(b) analysis de novo.  *Id.* at 411.

We typically analyze whether a pleading has failed to state a claim under the *Twombly*/*Iqbal* framework.  *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir. 2024).  That is, a plaintiff must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facts alleged, which we assume to be true,

---

[1]For Count One, which alleges common-law fraudulent misrepresentation, it is unclear on which state's law plaintiffs intend to rely.  Tennessee courts "apply the most significant relationship test . . . to determine which state law governs tort claims" like fraudulent misrepresentation.  *See EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 438 F. Supp. 3d 847, 854 (M.D. Tenn. 2018) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)).  But no matter which state's substantive law controls, Rule 9(b) governs pleading for this claim.  *See BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809–10 (M.D. Tenn. 2020) (applying Rule 9(b) to intentional-misrepresentation claim under Tennessee law); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (applying Rule 9(b) to fraudulent-misrepresentation claim under Illinois law); *TSC Rsch., LLC v. Bayer Chemicals Corp.*, 552 F. Supp. 2d 534, 543 (M.D.N.C. 2008) (applying Rule 9(b) to claim of fraud, on grounds of misrepresentation, under North Carolina law); *Douse v. Bos. Sci. Corp.*, 314 F. Supp. 3d 1251, 1262 (M.D. Fla. 2018) (applying Rule 9(b) to fraudulent-misrepresentation claim under Florida law); *Morris v. Taylor Commc'ns Secure & Customer Sols., Inc.*, 513 F. Supp. 3d 694, 705 (W.D. Va. 2021) (applying Rule 9(b) to fraudulent-misrepresentation claim under Virginia law), *aff'd*, 2023 WL 34267 (4th Cir. Jan. 4, 2023).

And Rule 9(b) applies to plaintiffs' other claims under the various state deceptive-business-practices statutes as well.  *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (applying Rule 9(b) to claim under Illinois Consumer Fraud and Deceptive Business Practices Act); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731–32 (M.D.N.C. 2015) (applying Rule 9(b) to claim under N.C. Gen. Stat. § 75-1.1, the North Carolina Unfair and Deceptive Trade Practices Act); *State Farm Mut. Auto. Ins. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327–28 (S.D. Fla. 2017) (applying Rule 9(b) to claim under Florida Deceptive and Unfair Trade Practices Act); *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (applying Rule 9(b) to claim under the Virginia Consumer Protection Act).

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

But also relevant when a complaint alleges fraud is Federal Rule of Civil Procedure 9(b). *Angelo*, 106 F.4th at 448. Under that rule, a party "alleging fraud" must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Generally, "Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). "More specifically, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *New London Tobacco*, 44 F.4th at 411 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). Further, the complaint "must describe the fraudulent scheme and the resulting injury." *Id.* (internal quotation marks omitted). "[G]eneral allegations" that raise the mere "possibility" of fraud will not do; instead, the complaint must "provide the factual predicates necessary to convince us that [the underlying fraud] in all likelihood" occurred. *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 882 (6th Cir. 2017) (citations omitted). "The point of Civil Rule 9(b) is to prevent, not facilitate, casual allegations of fraud." *Id.* At bottom, "the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012).

Here, plaintiffs make three conclusory allegations of fraudulent statements related to Strange Honey's labels. They allege that, although "Strange Honey's labels describe the honey as 100% raw Tennessee honey," the honey is, in fact, (1) not raw, (2) not from Tennessee, and (3) not 100% honey. Yet the complaint fails to adequately allege *why* these claims on the labels were false or *when* these allegedly fraudulent statements were made to plaintiffs.

First, the complaint contains sparse allegations about *why* the statements on the labels were fraudulent. Of the three allegations of fraudulent statements, the most detailed is that the honey is not raw. According to the complaint, the products are not raw because Strange Honey "heats its honey products above 105 degrees Fahrenheit," which "destroys many of the beneficial compounds" of raw honey. The complaint explains that "[o]ne way to determine whether honey

has been heated is to test its 5-hydroxymethylfurfural ('HMF') value." It alleges that industry standards dictate that "an HMF value over 40 mg/kg is strong evidence that raw honey was heated to a high enough temperature for a long enough period of time to break down the enzymes contained in the raw honey." The complaint then alleges: "*Some of the Strange Honey samples tested* had HMF values of 109, 96, 88 and 122 . . . ." (Emphasis Added).

The complaint gives no explanation of what this alleged "testing" entailed. It does not explain how these samples were tested, who conducted the testing, how many samples were tested, when or where the samples were purchased, whether any (or how many) samples had HMF values below 40, or other details that would adequately show why the statements on Strange Honey's labels were false. Indeed, the complaint does not allege that the jars of honey purchased by plaintiffs were the samples with the high HMF values or even that those jars purchased by plaintiffs were among the samples tested at all. *See Rautu v. U.S. Bank*, 557 F. App'x 411, 416 (6th Cir. 2014) (affirming grant of motion to dismiss for failure to satisfy Rule 9(b) where the plaintiff failed "to allege the nature of th[e] fraud with sufficient particularity and [did] not provide any factual details on the substance of the misrepresentations").

Sparser still are the allegations that the honey is neither from Tennessee nor 100% honey. Again, the crux of these allegations is the same: "*Some of the Strange Honey samples tested . . .* test[ed] positive for syrup and with a 100% certainty that the honey was from Vietnam." (Emphasis Added). On top of the unspecified testing problems just mentioned, the complaint never explains how one can determine whether honey is from Tennessee (or Vietnam or anywhere else) or whether honey contains syrup. Although the complaint alleges Strange Honey's motives for sourcing non-Tennessee honey (to meet consumer demand) and for adding filler (to cut costs), alleging potential motives for mislabeling is different from alleging facts that adequately show that Strange Honey mislabeled its products. Thus, the complaint does not particularly allege why the statements were fraudulent.

The complaint also lacks particularity with respect to *when* the allegedly fraudulent statements were made. Without mentioning a single specific date on which the statements were made to plaintiffs, the complaint concludes that defendants knew the honey did not comply with the labels "[a]t all relevant times." Nowhere does the complaint identify the "relevant times" at

issue. Plaintiffs' failure to "give even one date on which an alleged misrepresentation occurred" "dooms" their "ability to allege fraud with particularity." *Am. BioCare Inc. v. Howard & Howard Att'ys Pllc,* 702 F. App'x 416, 422 (6th Cir. 2017); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504–05 (6th Cir. 2007) (holding that pleading was insufficient when the plaintiff failed to, among other things, set forth the dates of any fraudulent statements); *Hirt*, 846 F.3d at 881 (same).

Plaintiffs resist these conclusions, arguing that the complaint specifically pleaded why the labels were fraudulent and when the statements were made. For instance, plaintiffs assert that, when studies or tests reveal an advertisement to be false, Rule 9(b) does not require that the specific product the plaintiff purchased be the one used in the study or test. But the cases they cite in support of that proposition are nonbinding district court opinions that are distinguishable.

For example, the complaint in *Dorfman v. Nutramax Laboratories, Inc.* described "twenty-two studies that purportedly refute[d]" the defendants' allegedly fraudulent representations about their products. 2013 WL 5353043, *11 (S.D. Cal. Sept. 23, 2013). Those detailed allegations "suggest[ed] that evidence exists to refute the truth of Defendants' representations." *Id.* By contrast, the unspecified "testing" here makes no such suggestion, leaving one to merely speculate whether the claims on the labels are true or false. Likewise, the complaint in *Johnston v. PhD Fitness, LLC* cited and described "numerous examples of clinical studies," published in scientific journals, that contradicted the defendant's marketing claims. 2018 WL 646683, *2, *4–5 (E.D. Mich. Jan. 31, 2018); *see also* First Amended Class Action Complaint at ¶¶ 52–60 & nn.16–24, *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152 (E.D. Mich. March 16, 2017), ECF No. 9. But here, plaintiffs' complaint contains nothing of the sort. So neither case helps plaintiffs.

Plaintiffs also argue that Rule 9(b) does not require specific dates, rather, broad statements like "at all relevant times" suffice. But again, the nonbinding district court cases they rely on are distinguishable because both dealt with ongoing representations made over a discrete timeframe. For instance, the complaint in *Alsbrook v. Concorde Career Colleges* alleged that the defendant college made repeated fraudulent statements, "via email, in person, and in letters," about its accreditation to former students during a readily identifiable timeframe—between when

the plaintiffs graduated and the stated deadline to trigger a tuition refund.  469 F. Supp. 3d 805, 819–20 & n.1, 843–44 (W.D. Tenn. 2020).    And the complaint in *Carroll v. TDS Telecommunications Corp.* alleged that the defendant Internet service provider made fraudulent statements about its data speeds while it provided Internet service to the plaintiff—once again, a readily identifiable timeframe.  2017 WL 6757566 at *1–2, *7 (W.D. Tenn. Dec. 29, 2017).

Here, by contrast, the complaint provides no timeframe at all, and even if it did, the circumstances of the alleged fraud require more particularity.  Plaintiffs' allegations hinge on whether certain honey bought by certain consumers in certain places was improperly cooked, adulterated with other ingredients, or sourced from foreign countries.  In this context, specific dates for when plaintiffs purchased their jars of honey would show not only *when* the allegedly fraudulent statements were made to plaintiffs but also *why* those statements could be proven false by the later "testing."  Unlike repeated promises of accreditation or ongoing Internet service, a jar of honey is a single, discrete product purchased on a particular date.  That jar of honey, on the date it is purchased, either complies with the claims on the label or it does not.  Thus, unlike the circumstances in *Alsbrook* and *Carroll*, the nature of plaintiffs' case here requires more specificity as to the purchase dates.

Thus, the district court properly granted Strange Honey's and the supermarkets' motions to dismiss.

## B.

Finally, we consider whether the district court properly denied leave to amend the complaint.  The grant or denial of an opportunity to amend is within the district court's discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  District courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "But a court need not grant a motion to amend when the reason for amendment is improper, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (citation and emphasis omitted).

The district court denied leave to amend because of both futility and undue prejudice. Because the proposed amendments were futile, we do not address other potential reasons for denying leave to amend. *See Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 n.5 (6th Cir. 2019). "[W]e review de novo the legal conclusion that amendment would be futile because a proposed amended complaint fails to state a claim." *Linden v. City of Southfield*, 75 F.4th 597, 602 (6th Cir. 2023). An amendment is futile when, after including the proposed changes, the complaint still "could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).

Plaintiffs' proposed amendments are scant. The primary differences between the original and proposed amended complaints are the addition of dates for when some plaintiffs bought the honey. For instance, the proposed amended complaint alleges that plaintiff Greer "bought Strange Honey at Ingles in Tennessee on November 8, 2018"; plaintiff Riemer "bought Strange Honey at Food City in Nashville, Tennessee on October 28, 2019 and March 19, 2022"; plaintiff Barker "bought Strange Honey from the Tennessee Artisan Honey website . . . from her home in Illinois on February 21, 2020"; and plaintiff Bowers "bought Strange Honey in Florida from Amazon on February 27, 2020."

The proposed amended complaint further adds that "the Strange Honey purchased by Plaintiffs in 2020 that . . . has been tested is from Vietnam," and "honey purchased by Plaintiffs in 2020 that was tested is from Argentina and was cooked when processed." And it updates the allegations about HMF values with the following underlined text:

> Some of the 2020 Strange Honey samples tested had HMF values of 109, 96, 88 and 122, in addition to testing positive for syrup and with a 100% certainty that the honey was from Vietnam. The 2022 Strange Honey samples had similarly high HMF values and tested with 100% certainty that the honey was from Argentina.

(Emphases Added).

These amendments fail to plead fraud with specificity or raise plaintiffs' claim for relief above the speculative level.

The added dates hardly help.  First, the proposed amended complaint provides no dates associated with misrepresentations to plaintiffs Turner and Goodman, leaving those claims just as defective as they were before the proposed amendments.  *See Am. BioCare*, 702 F. App'x at 421–22.  Second, other plaintiffs' claims fail because the proposed amendments do not connect their purchases with later testing.  Plaintiff Greer bought his Strange Honey in 2018 and plaintiff Riemer bought some in 2019, yet apparently only samples purchased in 2020 and 2022 were tested.  Third, the proposed amendments do not specify whether the honey plaintiff Riemer bought in 2022 was part of the "2022 Strange Honey samples tested," or whether the honey plaintiffs Bowers and Barker bought in 2020 was part of the "honey purchased by Plaintiffs in 2020 that was tested."  What is more, the proposed amended complaint provides no additional details about the nature of the testing, making it just as deficient as the original as to why the labels were fraudulent.

Because the proposed amended complaint does not cure the original complaint's deficiencies, it still does not "state with particularity the circumstances constituting fraud" or "alert defendants to the particulars of the allegations against them so they can intelligently respond."  *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751–53 (6th Cir. 2014).  Thus, we agree with the district court that the proposed amendments would be futile.

IV.

For these reasons, we affirm the district court's judgment.